# Dunbar *v.* Frazer.

*Application for Mandamus to Probate Judge, refusing to grant License for Retailing Spirituous Liquors.*

1. *Granting or refusing license to retail spirituous liquors; whether ministerial or judicial, and how reviewed.*—In granting or refusing a license to retail spirituous liquors, under the provisions of the act approved February 17th, 1885 (Sess. Acts 1884-5, p. 179), whether the application is contested or not, a judge of probate acts, not ministerially (as under former statutes), but judicially, or in a *quasi*-judicial capacity; and his action can not be reviewed or controlled by *mandamus.*

2. *Constitutionality of statute approved Feb. 17, 1885, regulating the granting of licenses to retail spirituous liquors.*—The act approved February 17th, 1885, entitled "An act to amend section 1544 of the Code, except as to" thirty-seven counties specified by name (Sess. Acts 1884-5, p. 179), is not unconstitutional, because the subject is not clearly expressed in the title; nor because it contains more than one subject; nor because it is an act to raise revenue, and originated in the senate; nor because it establishes a judicial tribunal, and does not allow a trial by jury or right of appeal from its decisions.

APPEAL from the Circuit Court of Lee.

Tried before the Hon. JAMES E. COBB.

The appellant in this case, F. M. Dunbar, applied by petition to the presiding judge of the third judicial circuit, which circuit includes the county of Lee, asking a *mandamus* to the Hon. THOS. L. FRAZER, the judge of probate of said county, requiring him to issue and grant to the petitioner a license to sell spirituous liquors in the town of Opelika for and during the year 1886. On the filing of the petition, an alternative writ of *mandamus* was granted and issued, returnable to the next term of the Circuit Court. The defendant appeared, and filed a demurrer to the petition, on the ground that his refusal to grant a license, under the facts stated in the petition, was a judicial act, and could not be controlled or reviewed by. *man-damus.* The court sustained the demurrer, and dismissed the petition; and this judgment is now assigned as error.

GEO. P. HARRISON, and TROY, TOMPKINS & LONDON, for appellant.—(1.) The petition shows that the application for a

[Dunbar v. Frazer.]

license was refused, under the provisions of the act approved Feb. 17th, 1885.—Sess. Acts, 1884–5, p. 179. That statute, it is insisted, is unconstitutional, because the subject of the act is not clearly expressed in its title, in that the title purports to "amend section 1544 of the Code," while the body of the act amends a former amendatory law; and because it contains more than one subject; and because it is an act to raise revenue, and originated in the senate; and because it establishes a judicial tribunal, with power to pass on the character of a citizen and convict him of immoral character, and gives no right of appeal or trial by jury. (2.) If the statute is valid, the petition shows a clear violation of a ministerial duty, for which *mandamus* is the appropriate remedy.—High on Extra. Legal Remedies, § 80; *Railroad Co. v. Moore*, 36 Ala. 371; *Insurance Co. v. Wilson*, 8 Peters, 291; *Tally v. Grider*, 66 Ala. 119; *Grider v. Tally*, 77 Ala. 422; *Russell v. The State*, 77 Ala. 89; *Ex parte Dillard*, 68 Ala. 594.

WM. H. BARNES, and W. J. SAMFORD, *contra*.—The cases of *Grider v. Tally* (66 Ala. 119; 77 Ala. 422), and *Russell v. The State* (77 Ala. 89), if their correctness be conceded, are not conclusive of this case, since they were made under a former law. The present law is different in many particulars, and clearly confers and contemplates the exercise of judicial authority, which can not be controlled by *mandamus.—Ex parte Harris*, 52 Ala. 90; *Ex parte Thompson*, 52 Ala. 98; *Insurance Co. v. Cleveland*, 76 Ala. 324; Freeman on Judgments, §§ 118, 531; *Arberry v. Beavers*, 6 Texas, 457; *Glasscock v. Comm'rs*, 3 Texas, 51; 5 Texas, 471. On principles of public policy, the former decisions ought not to be extended any further.

SOMERVILLE, J.—Prior to the act approved February 17th, 1885, found on pages 179 to 181 of the Acts of 1884-85, amendatory of section 1544 of the Code of 1876, as to the county of Lee and other counties in the State, it was held that the authority of the probate judge to issue license to retail vinous or spirituous liquors, as conferred by the statutes then in existence, was ministerial, and not judicial in its nature. *Grider v. Tally*, 77 Ala. 422; *Tally v. Grider*, 66 Ala. 119. In *Russell v. The State*, 77 Ala. 89, which was the last deliverance of this court on the subject, it was left an open question, as to whether the judge of probate acts in a ministerial or judicial capacity, when undertaking to issue a license under the act of February 17, 1885, to which we have above alluded. The present case brings this question before us for decision.

The rule settled in our decisions on this subject should not, in our judgment, be further extended. There are forcible reasons, on the contrary, for restricting it within the present narrow limits where it now rests. These reasons are chiefly two. Where the authority to issue a license is ministerial, as we have held to be the case under laws heretofore existing, the failure of the judge of probate to properly comprehend his duties, under a law of doubtful construction, may often be productive of one of two great evils. If the license be improperly refused by him, he may be subjected to harassing litigation, by which heavy damages may be recovered of him, although he may act in the very best faith in making such refusal; and so, if he err in granting the license, the person undertaking to act under the color of its protection, however innocent he may be of any criminal intention in fact, may yet render himself liable to indictment, and be subject to punishment by fine and imprisonment by doing so. This is a serious dilemma in which to place a faithful and well-meaning officer, and affords good reason for declining to carry our previous decisions any further than we have thus far done.

The act of February 17, 1885, now under discussion, bears upon its face the impress of a legislative intention to change the nature of this authority to grant licenses to sell spirituous, vinous, or malt liquors, so as to more clearly assimilate it to a duty partaking of a judicial nature. The proceeding is now made to resemble a suit *inter partes*, which is commonly held to be within the peculiar province of judicial power. As the law now stands, no such license can be granted, unless the applicant "*give notice*," for at least twenty days previously, by publication in a newspaper, or by posting notices in a manner specified by statute, naming the time when and the place where his application will be made ; and he is required to produce to the judge of probate "*proof*" that such publication has been made," which can only be done through the medium of satisfactory evidence. This must be done as a condition precedent, before the probate judge can hear and determine the sufficiency of the recommendation required to be presented by the applicant, which, save in certain excepted cases not affecting the one in hand, must be signed by "twenty respectable freeholders, who are householders, residing within the corporate limits of the town, city or beat, where such applicant proposes to do business, stating that they are acquainted with him, that he is possessed of a good moral character, and is, in all respects, a proper person to be licensed." Provision is made for contesting this application for license, by a denial under oath that the applicant is a person of good moral character and a proper person to be licensed ; and witnesses may be produced and exam-

[Dunbar v. Frazer.]

ined as to this issue, the determination of which by the judge of
probate is declared by the statute to be final.—Acts 1884-85,
pp. 179-181.

Construing all the parts of the act together, we are firmly
of the conviction, that the act of granting license, under the
provisions of this law, is the exercise of a function *quasi*-
judicial in its nature. The line of demarkation between pow-
ers judicial and ministerial, as often said, is narrow and
shadowy, and is exceedingly difficult of recognition in many
cases. Where a power of this doubtful kind is conferred on a
judicial officer, and the public interests will be best subserved
by holding it to be of a judicial nature, the courts are always
so inclined to hold.—*Ex parte Harris*, 52 Ala. 87. There is
now a series of decisions in this State, which seem to be fully
sustained by the weight of authority elsewhere, holding that, in
the matter of approving official bonds, the duty of deciding
upon the sufficiency of the sureties involves the exercise of
such judgment and discretion as to be of a *quasi*-judicial na-
ture, and that the exercise of the power will not be controlled
by *mandamus.*—*McDuffie v. Cook*, 65 Ala. 430 ; *Mobile Mut.
Ins. Co. v. Cleveland*, 76 Ala. 321 ; *Ex parte Harris, supra* ;
High on Extr. Rem. § 231 ; *Ex parte Thompson*, 52 Ala. 98.
In the last of the above cases it was said by BRICKELL, C. J.
" I can conceive of no case in which an officer is compelled to
hear evidence, and to exercise judgment on such evidence,
that the power, the duty he exercises, is not, to say the least of
it, in its nature judicial." In the same case it is observed of
*Tenn. & Coosa R. R. Co. v. Moore*, 36 Ala. 371, which is re-
lied on in this case by appellant's counsel, that there no ques-
tion of fact was presented. It can not be questioned, that
there is, in some respects, a striking analogy between those
cases and the class now under discussion.

It is no answer to this view of the case, that the probate
judge refused to issue the license, alone on the false ground
that the signers of the recommendation required by the statute
did not possess the statutory qualifications of being respectable
persons, freeholders, householders, and having a residence in
the corporate limits of the town of Opelika. The probate
judge determined these questions after a day fixed by the ap-
plicant for their determination. Some of the duties of the
judge, which he was required to perform at this time and
place, were manifestly judicial. He was compelled to hear
evidence, and to pass on the fact that the requisite twenty
days notice by publication had been given of the time and
place where the application would be made ; and in the event
of a contest being inaugurated by any householder who was a
freeholder, denying under oath the moral character and fitness

[Carlisle v. Carlisle.]

of the applicant, a clear case of the exercise of the judicial power would be presented. We see nothing in the statute to debar the probate judge from examining witnesses to determine these questions of fact, even where no direct contest is made. This may often furnish the only mode by which to properly inform himself. The main question, after all, to be determined, is that certified to by the signers of the recommendation, stating that the applicant is possessed of a good moral character, and is in all respects a proper person to be licensed. Whether a contest is made or not, under the provisions of this act, does not change the nature of the power exercised in deciding the question. The important fact is, that a contest is authorized. A judgment by default, or *nil dicit*, is none the less a judgment, because the issues involved were not litigated. It is true, moreover, that if some of these duties stood alone, they might well be held to be ministerial. But, where they are so intermingled with other functions, clearly judicial, as to invoke the delicate task of undertaking by dissection to separate the one from the other, so as to class one step as judicial, and another following it as ministerial, the courts must decline to enter upon a field so doubtful. We are of opinion, that this would be utterly impracticable, and was never contemplated by the legislative intention.

Our conclusion is, that the safer course is to hold that the decision of the probate judge, as to all facts necessary to be determined by him, in granting or refusing a license under the act of February 17, 1885, is not reviewable by *mandamus*.

We are further of opinion, that the objections urged to the constitutionality of the act are not well taken.

The demurrer to the relator's petition was properly sustained, and the judgment of the Circuit Court is affirmed.