# Montgomery v. The State *Ex rel.* Enslen.

*Information in the nature of Quo Warranto.*

1. *Civil office under the State within Const. Art. IV. § .17.*—The office of police judge of the city of Birmingham, created by Act of 1894, (Acts 1894-95 p. 527.) is "a civil office of profit under the state," within Const. Art. 4, § 17, prohibiting one from holding any "office of profit under this state," unless elected thereto by the people. created by the legislature when he was member thereof.

2. *An amendatory statute which recites the sections of former act as amended meets requirements of Const. Art IV § 2.*—Act Feb. 21, 1893 (Acts 1892-93 p. 789) entitled "An act to amend sections 3171, 3178, of the Code of Alabama," and which, in the body of the act, recites the sections as amended, meets the requirements of Const. Art. 4, § 2, providing that each law shall contain but one subject, to be clearly expressed in its title, and requiring an amended law to be "re-enacted and published at length "

3. *Information in nature of quo warranto; burden of proof.*—In proceedings by information in the nature of *quo warranto* under the statutes (Code 1886 §§ 3170-3172) where the respondent admits that he is holding the office and exercising its duties, the burden is devolved on him of showing by what authority he holds the office and that he is in the rightful exercise of its duties and powers. and this rule is not changed by the statutory provision which permits a private person to join with the State in the enquiry by *quo warranto.*

4. *Same; where respondent denies all allegations of petition —*Where the information in a proceeding by relation alleges that defendant. in violation of Const. Art. 4, § 17, prohibiting one from holding any "office of profit under this state" created by the state legislature when he was a member, unless elected thereto by the people, held by appointment the office of judge of a police court created by the legislature when he was a member, and the defendant denies each allegation of the information, proof by the state that the defendant is holding

[Montgomery v. The State *Ex rel*. Enslen.]

an office of profit under the state throws on the defendant the burden of showing that he holds the same lawfully.

5. *Error without injury.*—Where the information alleges that defendant, in violation of Const. Art 4, § 17, prohibiting one from holding any "office of profit under this state" created by the legislature of which he was a member, unless elected thereto by the people, held by appointment the office of judge of a police court created by the legislature of which he was a member, and instead of making a legal return defendant denied each allegation of the information; the admission of evidence by the state identifying the defendant as a member of the legislature which created the office, after it had already shown that he was holding an office of profit under the state, if error, was not prejudicial to the defendant.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. J. J. Banks.

This is a proceeding in the nature of *quo warranto*, brought by the State on the relation of Christain F. Enslen and by Christain F. Enslen. The object of the proceeding is to have the right of the respondent to hold the office of Judge of the Police Court of Birmingham, determined; and to oust him from the said office, on the ground that he was a member of the legislature which created the office and that fact rendered him ineligible to hold said office. The averments of the information are sufficiently shown in the opinion. The respondent demurred to the information, assigning many grounds, the only one of which is reviewed on the present appeal is also sufficiently stated in the opinion. The demurrer was overruled, and the respondent duly excepted. Thereupon the respondent filed an answer which was simply a denial of the averments of the information. At the trial the respondent demanded a jury for the trial of the cause; whereupon the court ordered the sheriff to summon instanter thirty-six qualified jurors as a *venire* for the trial of said cause. Thereupon the respondent objected to the trial of said cause at that time the said cause not having been set on the docket according to the rules of the court in setting causes down for hearing. According to the rules and practice of said court, causes are set on the regular docket of said court for each month, and a printed calendar of said causes is furnished to the attorneys practicing in said court about a month before the causes are reached for trial; and at the time this cause was called

for trial there were other causes on the docket set for trial, and the week was a non-jury week. The court overruled this objection, required the respondent to go to trial; and respondent duly excepted. The thirty-six jurors ordered by the court were not drawn out of the box, but were selected by the sheriff from the county at large; and out of said thirty-six so summoned, twelve were examined by the court touching their qualifications as jurors, and presented to the respondent as the jury to try said cause. The respondent objected. to being tried before said jury, and entered the following motion : "Comes the defendant and objects to being tried by or before the jury empannelled in this cause and moves the court to quash the panel, for that said jury has not been selected, drawn and empanelled as required by law; for that the act to amend sections 3171, 3178, 3187 of the Code of Alabama, approved February 21, 1893, under the provisions of which said jury was empanelled, is unconstitutional and void ; for that the defendant is entitled to a trial by jury—a legal jury—and the jury empanelled to try this cause is not a legal jury within the contemplation of the law. Defendant further objects to being tried by or before said jury, for that the same is a special jury, and this court has no power to empanel such a jury during a regular term of this court, whereat regular juries, drawn summoned and empanelled according to law will be in attendance." This motion and objection were overruled, and respondent duly excepted.

The relator introduced evidence tending to prove the averments of the information ; but the respondent did not introduce any evidence at all. Upon the introduction of the respondent as a witness by the relator, he testified in answer to questions asked him, against his objection and exception, that he was the same J. H. Montgomery, who was a representative in the last General assembly, and who was then Judge of the Police Court of Birmingham. Upon the introduction of all the evidence, the court gave the general affirmative charge in favor of the relator, and refused to give a like charge in favor of the respondent. To both of these rulings the respondent separately excepted. There was judgment excluding the respondent from the office of Judge of the Police Court of Birmingham. The re-

spondent appeals from this judgment; and assigns as
error the several rulings of the trial court to which he
reserved exceptions.

S. W. JOHN, D. A. GREENE and LANE & WHITE for
the appellant.—The court erred in overruling the mo-
tion to quash the writ and information, because the
statute under which the information is filed is unconsti-
tutional, the subject of the act not being expressed in
the title as required by the constitution, Article 4, sec-
tion 2.—*Harlan v. Territory*, 13 Pacific Rep. 453; *The
Borrowdale*, 39 Fed. Rep. 376; *The People ex rel The City
of Rochester v. Briggs*, 50 N. Y., 553–561; *The People, ex-
rel McConvill v. Hills*, 35 N. Y., 449–453; *Ex-parte Rey-
nolds*. 87 Ala. 138; *Tingue v. Village of Fort Chester*, 4
N E Rep. 625; *Gandy v. State*, 86 Ala. 20; *Gunter v.
Texas Land & Mortgage Com.* 17 SW. Rep. 840; *State v.
Mallinson*, 17 SW. Rep. 843; *Randolph v. Builders &
Planters Supply Co.*, decided at this term, 23 Amer. &
Eng. Ency. of Law 268; Sutherland on Stat. Const. §
101, and note 1; Article 4, Section 2 of the Constitu-
tion, requiring the subject of an enactment to be ex-
pressed in the title is mandatory.—*Balentine v. Wicker-
sham*, 75 Ala. 533.

To give the Circuit Court jurisdiction, it must be
averred that the defendant was exercising the functions
of some office in Jefferson county. See acts of the Gen-
Assembly 1892-3, page 789. This question was raised
by the first and second grounds of demurrer to the in-
formation.

The office sought to be vacated by this proceeding is a
municipal office purely, and not an office of the State or
under the State.—*Attorny General v. Connors*, Fla., 9 So.
Rep. 7; *Ex-parte Wiley*, 54 Ala. 226; *Santo v. State*, 2d
Iowa, 164–219–220; *Carpenter v. People*, 5 Pacific Rep.
828–836; *People v. Henry*, 62 California 557; *People v.
Provines*, 34 California, 520; *Briton v. Steber*, 62 Mis-
souri 370; *State v. Wilmington City Council*, 3 Har. 294;
*Respublica v. Dallas*, 3 Yeates, 300; *Mohan v. Jackson*,
52 Ind. 599; *In re. Stewart*, 53 California, 748; *Barton
v. Kalloch*, 56 California, 95.

The information was defective in stating conclusions
of law and not facts, as to the office being a civil office

of profit under the State.—*McDonald v. Mobile Life Ins. Co.*, 56 Ala. 468–471.

Under Article 4, Section 2 of the Constitution, no law can be revived, amended or its provisions extended or conferred by reference to its title only. The Act of the Legislature, approved Feb. 21, 1893, (Acts 1892–3, p 789) under which this proceeding is instituted is in conflict with the above provision of the Constitution in this, that it amends Sec. 4316 of the Code of Alabama, relative to the drawing of juries, without setting out said section as required by the above constitutional provision. *Bay Shell Road v. O'Donnell*, 87 Ala. 376; *Barnhill v. Teague*, 96 Ala. 207; *Stewart v. State*, 100 Ala. 1; *McMiller, v. Barry*, 14 So. Rep. 655; *Stewart v. Hale County*, 82 Ala. 270; Sutherland on Stat., Const. §§ 131–132-133.

It was error to require the defendant to testify in this cause against his objection as it might criminate him.—Code of Alabama, Vol. 2. Section 3968; *Kelly v. State*, 72 Ala. 244; Brown's Legal Maxims 968.

JAMES A. MITCHELL and Z. T. RUDOLPH for the appellees.—The plaintiffs contend that the defendant is ineligble to the said office under Section 17, Article 4, of the Constitution, and that he is unlawfully holding the office.

The demurrer raises the question whether the office is a "civil office of profit under this State," within the meaning of the Constitution. The evident intention of the framers of the Constitution was to prohibit the legislature from creating offices, or increasing the salary of officers for the possible benefit of any member's thereof, and thereby to remove the temptation of prostituting their positions for private gain or preferment. And any office which is created and the duties thereof defined by an act of the legislature was intended to come within the ban of that provision of the Constitution, although the functions of the office are confined to the administration of city or county affairs. The test is, Did the legislature create the office and define the duties thereof? If so, it is an office "under this State"; the words *"under this State"* are used to distinguish the offices referred to from federal offices or offices created by corporations, either municipal or private, with which the legislature has nothing to do. The following decisions support these views;

*State v. Valle*, 41 Mo. 31 ; *Britton v. Steber*, 62 Mo. 370 ; *Shelby v. Alcorn*, 36 Miss. 273 and 72 Am. Dec. 169 note.

The expression "Office under this State" may have a broader meaning than "State office," although the latter is amply broad to include the office concerned in this action.    Mr. Dillon includes among State officers all those that have to do with matters of public concern, such as the administration of justice, the preservation of the public peace, and the like.    1 Dillon on Municipal Corporations, Sec. 58.

In some decisions it is said that any officer, who possesses or administers any part of the sovereign power of the State is a State officer, and comes within the purview of similar constitutional provisions.—*Shelby v. Alcorn, supra.*

Certainly the judge of the police court of Birmingham possesses such power.    The court has jurisdiction not only of all the offenses against the by-laws and ordinances of the city of Birmingham but also "of all misdemeanors committed in precincts 21 and 37 in Jefferson county, except violations of the revenue laws of the State."    Precincts 21 and 37 extend a considerable distance beyond the corporate limits of the city.    The court also has power to examine all persons charged with felony.    The judge may be impeached and removed from office in the same manner as circuit judges.    And whenever any person is tried in said court for an offense of which the court has jurisdiction, he shall not again be tried in any court for the same offense.

It is evident that the court is one of the "inferior courts of law and equity" that the General Assembly is authorized to establish by section one, Article six, of the Constitution.    It is just as much a State court as the city court of Birmingham, or as any other city court.

The answer was clearly insufficient, and equivalent to no answer at all ; and the plaintiffs were entitled to a judgment excluding the defendant from the office, because he did not answer and because he did not attempt to show by what warrant or authority he held the office.

It is a well established proposition that in proceedings in the nature of *quo warranto* to try the right to hold an office, the burden of proof rests upon the respondent, and, if he fails in his proof, judgment of ouster may follow. 19 Am. & Eng. Encyc. of Law, pp. 673 and 680; High on

Extraordinary Remedies, p. 497 and cases cited; Heard's Short on Quo Warranto, 192.

The law and practice in this regard have never been changed by our statutes. The statutes of this State have changed the general law governing such actions only as to the manner of bringing suit and simplifying the proceedings.

The testimony of witness Enslen, the relator, which was objected to, went to prove matters averred in the information, although perhaps unnecessary to a decision of the cause.

The defendant was a commissioned officer, and the court took judicial knowledge that he held the office concerned in this action.—Code, § 245; *Cary v. State*, 76 Ala. 78 ; 3 Brickell's Digest, 408.

The court also took judicial notice of the journals of the two houses of the legislature, which showed that the defendant was a member of the house of representatives, and that he was elected by the two houses to the office of judge of the police court of Birmingham.—*Moody v. State*, 48 Ala. 115 ; 3 Brickell's Digest, 407.

The plaintiff proved the election of the defendant as a representative of the General Assembly by offering in evidence the declaration of the result of the August election in 1894, by the board of supervisors.—Code, § 388. This was duly signed by the judge of probate, circuit clerk, and sheriff, as required by law. . The court took judicial notice of their signatures. It was the original declaration that was introduced, and not a copy.

The facts necessary to authorize a judgment of ouster being either within the judicial knowledge of the court or proven by record evidence, and no evidence having been introduced by the defendant, the plaintiffs were entitled to the charge to find the defendant guilty of unlawfully holding the office. If there was error committed in the introduction of any other testimony, it was error without injury.

COLEMAN, J.—The proceeding is by information in the nature of *quo warranto*, and is prosecuted for the purpose of enquiring into the legality of the claim of the respondent to the office of Judge of the "Police Court of Birmingham." Section 3170, authorizes the proceeding "when any person usurps, intrudes into, or unlawfully

holds, or exercises any public office, civil or military, or
any franchise within this State, or any office in a corpo-
ration created by the authority of this State." Section
3171 of the Code, as amended by act of the legislature,
1892-3, p 789, provides that it may be brought without
the direction of the judge, on the information of any per-
son giving security for the cost of the action, &c. Sec-
tion 3172 provides, that when the action is brought on
the information of any person his name must be joined
as plaintiff with the State. These provisions of the Code,
seem to have been fully observed and complied with.

Section 17, Article IV of the constitution is as follows :
"No senator or representative shall, during the term for
which he shall have been elected, be appointed to any
civil office of profit under this State, which shall have
been created, or the emoluments of which shall have been
increased during such term, except such offices as may be
filled by election of the people." The information states
and avers that the respondent was a representative of
Jefferson county, Alabama, for the term of the legis-
lature beginning on the 13th of November,
1894, and that during the term, and while the respond-
ent was a member, the legislature created and estab-
lished an inferior court of criminal jurisdiction in the
city of Birmingham, defined its powers and extent of its
territorial jurisdiction, and provided for the election of
a judge by the legislature. The act of the legislature is
referred to in the information to show the character of
the court, and that the office of the judge thereof "is a
civil office of profit under this State," within the mean-
ing of the constitutional provision. The information
further avers and states that the respondent, during the
term and while a representative, was elected judge of
the court by the legislature of which he was a member
thus created and established, and that soon after his
election, he resigned his seat as a member of the legis-
lature, and entered into said office as judge and exer-
cised and continues to exercise the powers, privileges
and duties thereof, contrary to the constitutional pro-
vision, and that he is unlawfully holding and exercising
said office. The purpose of the information is not to
ascertain whether some one else has a better right to the
office than the respondent. No judgment of induction
into office is sought. There is no element of a contested

election in the case. The information is full and clear, and though there are several grounds of demurrer, to the information, there is but one, which, in our opinion, requires the consideration of this court. The demurrer raises the question, as to whether the office of "Judge of the Police Court of Birmingham" is "a civil office of profit under this State," within the meaning of Section 17, Article IV of the constitution, *supra*.

Similar constitutional provisions exist in many, if not all of the States of the Union, and the question has been before the various courts many times, as to what constitutes a civil office of profit within the constitutional provision. In Spelling on Extraordinary Relief, Vol. 2, § 1780, it is said : "There are three principal tests for determining whether one performing duties of a public nature is a public officer in the sense of subjecting his incumbency or employment to a *quo warranto* proceeding ; first, whether the sovereignty, either directly through legislative enactment or executive appointment, or indirectly, as through a municipal charter, is the source of authority ; second, whether the duties pertaining to the position are of a public character,—that is, due to the community in its political capacity ; and, third, whether the tenure is fixed and permanent for a definite period fixed by law, unless for neglect of duty or malfeasance, or subject to termination at the will of others without the assignment of cause."

Dillon on Municipal Corporations, section 58, discussing the question of officers and offices, uses the following language : "And here, it is important to bear in mind the before mentioned distinction between *State* officers—that is, officers whose duties concern the State at large, or the general public although exercised within defined territorial limits—and *municipal* officers, whose functions relate exclusively to local concerns of the particular municipality. The administration of justice, the preservation of the public peace, and the like, although confided to local agencies are essentially matters of public concern ; while the enforcement of municipal by-laws proper, the establishment of gas-works, of water-works, the construction of sewers, and the like, are matters which pertain to the municipality as distinguished from the State at large."

In the case of *Shelby v. Alcorn*, 36 Miss. 273, constru-

ing a constitutional provision similar to ours, the court says: "The powers vested in the government of the State of Mississippi are either legislative, judicial, or executive; and these respective branches of power have been committed to separate bodies of magistracy. It follows, hence, that whether an office has been created by the constitution itself, or by statute enacted pursuant to its provisions, the incumbent, as a component member of one of the bodies of the magistracy, is vested with a portion of the power of the government, whether the portion of the power of the government which he is thus entitled to exercise is legislative, judicial, or executive in its character.

"It is, therefore, undeniably true, as maintained by the counsel for the defendant in error, that the words 'civil office under the State,' contained in the article of the constitution above referred to, import an office in which is reposed some portion of the sovereign power of the State, and, of necessity, having some connection with the legislative, judicial, or executive department of the government. It is a conclusion which is the necessary and logical result of the theory of the government itself."

The following citation from 3 Maine Rep. 481 on a similar question is in point: "We apprehend that the term 'office' implies a delegation of a portion of the sovereign power, and the possession of it by the person filling the office; and the exercise of such power within legal limits, constitutes the correct discharge of the duties of such office. The power thus delegated and possessed, may be a portion belonging sometimes to one of the three great departments, and sometimes to another; still, it is a legal power, which may be rightfully exercised, and in its effects will bind the rights of others, and be subject to revision and correction only according to the standing laws of the State. An employment, merely, has none of these distinguishing features. A public agent acts only on behalf of his principal, the public, whose sanction is generally considered necessary to give the act performed the authority and power of a public act or law. And if the act be such as not to require such subsequent sanction, still it is only a species of service performed under public authority but not in execution of any standing laws. . . . . . It ap-

[Montgomery v. The State *Ex rel.* Enslen.]

pears, then, that every office, in the constitutional meaning of the term, implies an authority to exercise some portion of the sovereign power, either in making, administering, or executing the laws."

In the case of the *State ex rel. Att'y Gen'l v. Vallé*, 41 Mo. 31, it is said : "In a certain popular acceptation, the words *civil office under this State* might possibly be interpreted to mean *State officers* in the sense of participating directly in the administration of the State government as such ; but they are none the less civil officers under this State because their functions are confined to the local administration. The offices are created and the officers are appointed, and their powers given, and their duties defined, and their salaries fixed, directly by act of the Legislature. They exercise a share of the powers of civil government, and their authority comes directly from the State. They are to be considered as much civil officers under this State as the judge of a court, or the mayor of the city. They would be none the less so if appointed by the mayor ; for they would still derive all their powers from the act which creates the office. The mode of appointment is not material." The facts of the present case do not require us to go so far as the Missouri court.

Many authorities might be added if it were deemed necessary, in line with those cited. A reading of the act establishing the court leaves no doubt, that the office of Judge of "The Police Court of Birmingham," is a civil office of profit under this State." The first section among other things declares, that it "shall have exclusive jurisdiction of all offenses against the by-laws and ordinances passed and ordained by the mayor and aldermen of Birmingham within the territory now embraced in the police jurisdiction of said city, and of all misdemeanors committed in precincts twenty-one (21) and thirty-seven (37) in Jefferson county, except violations of the revenue laws of the State, of which offenses it shall not have jurisdiction ; and it shall also have the power to examine all persons charged with felonies, and to commit the same to jail, admit them to bail, or discharge them, as the law and evidence in every case may require."

"Sec. 2. Be it further enacted, That the judge of said court shall be elected by the general assembly, and

to hold office for the term of four years, and until his successor is elected and qualified. He shall be learned in the law and have resided in Jefferson county for one year next before his election, and must reside therein while in said office. Such judge shall have the power to administer oaths and take affidavits in all cases in which affidavits are required by law, to take recognizances, admit to bail, approve bail bonds in or out of court, and do every act, and issue every process, mesne or final, necessary to effect the due administration of the laws in the cases or offenses, jurisdiction of or power over which are conferred by this act. He may be impeached and removed from office for the same causes and in the same manner as circuit judges are impeached and removed; he shall receive annually the salary of fifteen hundred dollars to be paid in monthly instalments out of the treasury of the mayor and aldermen of the city of Birmingham.''

''Sec. 5. Be it further enacted, That whenever any person is tried in said court for an offense of which said court has jurisdiction, he shall not be again tried in any court for the same offense, but the judgment of said court shall be a bar to any subsequent prosecution for the act for which he was tried in said police court.''

In fact the entire act shows conclusively that it is an office within the meaning of the Constitution, and the election of a member of the house of representatives, as judge of the court, to be within the evil intended to be provided against by the Constitution.

The demurrer also raises the further question of the constitutionality of the act of February 21st, 1893, (Acts of 1892–3, p. 789). It is contended that the act violates section 2, article 4 of the Constitution, which declares that ''Each law shall contain but one subject which shall be clearly expressed in its title * * * * and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only; but so much thereof as is revived, amended, extended, or conferred, shall be re-enacted and published at length.'' The act is entitled ''An act to amend sections 3171, 3178 and 3183 of the Code of Alabama.'' The act begins as follows: ''Section 1. Be it enacted by the General Assembly of Alabama, That sections 3171, 3178 and 3183 of the Code of Alabama be amended

so as to read as follows : "Section 3171." Then follow the sections as amended, in full. Appellant contends that under the Constitution, it was necessary to set out the sections proposed to be amended as they were in the Code, and then as amended should be set out at length. There are some few decisions which support this construction of the constitutional provision, but the very great weight of authority is opposed to this view, and we do not think the language of the Constitution, in view of the evil intended to be guarded against, requires such a construction. The generally adopted construction of similar constitutional provisions is, that ''it is a sufficient compliance with the requirement to set out the law as amended without reciting the old law as it stood before the amendment."—*State v. Bennett*, 102 Mo. 364 ; *Bush v. Indianapolis*, 120 Ind. 476 ; *State v. Amer. Forcite Co.*, 50 N. J. 275. A great many authorities are collected in the notes to the text in 23 Amer. & Eng. Ency. of Law, p. 281, This construction has also been recognized in this State in the case of *Wilkinson v. Ketler*, 59 Ala. 306 ; *State v. Warford*, 84 Ala. 15 ; *Dunbar v. Frazier*, 78 Ala. 538.

We do not think the act subject to the constitutional objection urged against it. Section 4316 was a general provision, providing for the contingencies therein mentioned, and would have applied, independent of such provision in the act under consideration.

Instead of making a formal and, we should add, a legal return to the information, respondent merely denied each and every averment of fact contained in the information. The rule in proceedings of this character, where the respondent admits that he is holding and exercising the powers and duties of the office, devolves upon him the burden of showing by what authority he holds the office, and that he is in the rightful exercise of its duties and powers. The State has the undoubted right to require of every one, who claims to hold and does hold a public office under its statutory or constitutional provisions, to show a lawful authority for the exercise of its powers and privileges, and this rule is not changed, by the statutory provision which permits a private person to join with the State in the enquiry by *quo warranto*. The denial of the respondent that he held the office, and his further denial that he had or was then exercising its

[Montgomery v. The State *Ex rel.* Enslen.]

powers and privileges imposed upon the State to make good these averments of facts. Legal evidence was introduced on the part of the State, and which was not controverted, fully sustaining the averments. Having introduced evidence that the respondent was holding and exercising the powers and duties of a civil office of profit under the State, the burden then devolved upon the respondent to show a lawful authority. Failing in this, the judgment of ouster or exclusion must follow. The respondent introduced no evidence, and did not undertake to meet the burden cast upon him. It is not a matter of which the respondent can complain that the State went further and undertook to identify him as the member of the legislature, which created and established the court, and had there been error in admitting evidence for the purpose of identification, it was error without prejudice to respondent. It had been shown that respondent was holding a civil office of profit under the State. Here the State might well have rested, and unless the respondent removed the burden placed upon him by such proof, the State was entitled to judgment of ouster or exclusion. We deem it, therefore, unnecessary to consider whether the court erred in requiring the respondent to answer whether he was not the same person who was a member of the legislature during the term in which the office was created.

The appellant contends that he was not tried by a legal jury. The act of February 21, 1893, p. 789, provides for trial by a jury on the demand of either party, and the act requires, that when a jury is demanded, it shall be drawn as required by section 4316 of the Code. The contention is, as we understand from the argument of counsel for appellant, that the trial coming on to be heard during term time of the circuit court there was no authority for summoning a jury under section 4316 of the Code. The record shows that there had been no jury summoned for the week during which this cause came on to be heard, that it was a "non-jury" week of the term. The very contingency existed provided for in section 4316 of the Code, and we do not see wherein the court failed in duty in organizing the jury. The statute (Acts, 1892-93, *supra*) declares that the circuit courts shall be always open and in session for the trial of such cases, and of the taking of all lawful proceeding therein.

[White *et al.* for use &c. v. Simpson.]

There are a great many exceptions and assignments of error, nearly all of which are purely technical. We have passed upon such as, in our opinion, deserve the consideration of this court. We find no error in the record of which appellant can complain.

Affirmed.