STATE OF MAINE *vs.* WILLIAM A. HOLLAND.

Cumberland. . Opinion July 3, 1918.

*Intoxicating liquors. Rights of registered apothecaries.*

The reference in Section seventeen of Chapter twenty of the Revised Statutes of 1916 to the United States Pharmacopoeia, Dispensatory and National Formulary is to the editions of those works recognized as authority among apothecaries, when Chapter seventy-four of the Public Laws of nineteen hundred and seven became effective.

Respondent indicted for keeping and maintaining a tenement used for the illegal sale of intoxicating liquors. Case tried at Superior Court for Cumberland County and verdict of guilty was returned. Respondent's counsel filed exceptions to certain rulings of presiding Justice relative to the introduction of certain evidence bearing on the question of the rights of the respondent as a registered druggist to keep in his possession certain quantities of whiskey. Exceptions sustained.

Case stated in opinion.

*Carroll L. Beedy,* for State,

*William C. Eaton, and W. C. Whelden,* for respondent.

SITTING: CORNISH, C. J., SPEAR, BIRD, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

MORRILL, J. The respondent stands convicted of keeping and maintaining a tenement situated in Portland, used for the illegal sale, and keeping for sale, of intoxicating liquors. The evidence on the part of the State disclosed that the respondent had in his possession on the seventh day of January, 1917, within the period covered by the indictment, in a building owned and operated by him as a drug store, about four gallons of whiskey. He introduced evidence tending to show that during the period covered by the indictment he was a duly examined and registered apothecary, as provided by the laws of the State, and being such registered apothecary he claimed the right, under Sec. 17 of Chap. 20 of the R. S., to keep "all medicines and poisons authorized by the United States Pharmacopoeia, Dispensatory and National Formulary, as of recognized medicinal utility," and that whiskey was among the medicines and poisons so authorized.

In support of this contention his counsel offered in evidence two books, one stated by counsel in making the offer to be "Dispensatory of the United States of America and the National Formulary in one volume, issued in 1894, 7th Edition," and the other likewise stated to be the "Pharmacopoeia of the United States of America, 8th Decennial Revision, published in 1905." The respondent's counsel claimed that the United States Pharmacopoeia and National Formulary, recognized as official in 1907, should be received in evidence; the Justice presiding ruled that the revisions of those works in force at the time of the enactment of the Revised Statutes of 1916 would govern, and excluded the evidence. To which ruling the respondent has exceptions.

We think the exceptions must be sustained. The United States Pharmacopoeia is a book compiled by or under the supervision of an organization of pharmacists and druggists, and is recognized as authority; it is revised from time to time, perhaps decennially, if we may be permitted to so infer from the offer of the book. The National Formulary is a similar publication, also revised from time to time.

The statute in question (R. S., 1916, Chap. 20, Sec. 17), was first enacted in 1877, Chap. 204, Sec. 5 in the form in which it appears in the R. S. of 1903, Chap. 30, Sec. 18; it was amended by Public Laws, 1907, Chap. 74, Sec. 3, and given the form in which it now appears.

We think that when the legislature of 1907 referred to the United States Pharmacopoeia and National Formulary for the guidance of registered apothecaries in this State, it must have referred to the compilations known by those names, then recognized as authority among apothecaries; it is not to be supposed that the legislature intended to adopt compilations not then made and of whose contents, as affecting the law of this State against the illegal sale and keeping for sale of intoxicating liquors, it could have no knowledge. It knew what the books then recognized as authority included; it could not know what the revisers of later editions might include or exclude.   If the legislature intended to adopt the later revisions of the works referred to, as they should be made from time to time, that intention should have been made clear by apt words, as was done in The Food and Drug Act of 1911, Chap. 119, Sec. 11, in which the standard of strength, quality or purity of a drug is that laid down in the United States Pharmacopoeia and National Formulary "official at the time of investigation," R. S., 1916, Chap. 36, Sec. 12.

Moreover, the statute, if construed according to the ruling to which exception is taken, may be open to the objection that it is an unauthorized delegation of legislative power, to the revisers of the future editions, as suggested in *State* v. *Emery*, 55 Ohio St., 364; upon that point we express no opinion.   It may be noted that in the particular referred to, the language of The U. S. Food and Drug Act of June 30, 1906, Chap. 3915, Sec. 7, (Comp. St. 1916, Sec. 8723) is the same as appears in R. S., 1916, Chap. 36, Sec. 12.

The adoption of the specific language in the later act strongly indicates that the construction which we place upon the earlier act is the true one and accords with the legislative intention.   The re-enactment of the law as amended in 1907, in the revision of 1916, does not affect its construction.   "When a statute is incorporated in a general revision of all the statutes, and re-enacted along with the re-enactment of other statutes, its purpose and effect are not changed, unless there be some compelling change in the language.   Usually a revision of the statutes simply iterates the former declaration of legislative will." · *Cummings* v. *Everett*, 82 Maine, 264; *Martin* v. *Bryant*, 108 Maine, 256.

*Exceptions sustained.*