STATE OF NORTH DAKOTA, upon the relation of Carl R. Kosit-
zky, Respondent, v. WILLIAM J. PRATER, Appellant.

### (189 N. W. 334)

Statutes — Codifiers presumed not to have intended to change law; changes
in revision of statute not regarded as altering the law, unless there is a
clear intent to do so; legislative intent may be ascertained by reference to
prior statute, in construing a revised statute; right of board and univer-
sity and school lands to remove commissioner of university and school
lands arbitrary.

Where, concerning the office of the Commissioner of University and
School Lands, the statute provided that the Commissioner's term of office
should be for two years and should be at all times subject to the immediate
control of the board who appointed him, and, where, in the revision and
codification of the law in 1895, the statute was changed so as to provide,
for the Commissioner, a term of two years subject to removal by the
board, and where, upon investigation of the legislative history of the act
no legislative intent is disclosed to change the law or the legislative
policy, it is *held.*

1. The general presumption obtains that the codifiers did not intend
to change the law as it formerly existed.

2. Changes made in the revision of the statute by alteration of the
phraseology will not be regarded as altering the law unless there is a clear
intent shown so to do.

3. In ascertaining the legislative intent reference may be had to the
prior statute.

4. The statute, now sections 285 and 296 C. L. 1913, upon principles
of statutory construction, grants to the board an arbitrary right of re-
moval.

### Opinion filed July 8, 1922.

Proceeding of mandamus in District court, Burleigh county, *Nuessle,*
J., to compel the defendant to deliver up the office of commissioner to
the relator appointed by the board. The defendant has appealed from a
peremptory writ in favor of the relator.

Affirmed.

*William Langer, W. S. Lauder, Geo. E. Wallace,* for appellant.

"We have not found any case where an officer who was appointed

for a fixed term—and when the power of removal was not expressly declared by law to be discretionary—has been held to be removable except for cause, and wherever cause must be assigned for the removal of the officer he is entitled to notice and a chance to defend." Hallgren v. Campbell, 82 Mich. 255; Field v. Com., 32 Penn. St. 478; State v. City of St. Louis, 90 Mo. 19 (1S. W. Rep. 757).

"In such a case, the rule is, and on principle must be, that the power of arbitrary removal is vested in the person or board vested with the appointing power, as incidental to the power of appointment, unless the law places a limitation on such power." Mechem Pub. Off. § 445; Throop Pub. Off. §§ 304-361; Ex Parte Hennen, 13 Pet. 230; People v. Robb, 126 N. Y. 180, 27 N. E. 267; Miles v. Stevenson, (Md.) 30 Atl. 646-648; Lease v. Freeborn (Kan. Sup.) 35 Pac. 817; People v. Fire Comm'rs. of New York, 73 N. Y. 441; People v. Shear (Cal.) 15 Pac. 92; Newsom v. Cocke, 44 Miss. 352; State v. City of St. Louis, (Mo. Sup.) 1 S. W. 757-758; People v. Hill, 7 Cal. 97; Smith v. Brown, 59 Cal. 672.

The authorities are practically unanimous and it is well settled that it is only where no term or tenure is fixed by the constitution or the statute that the officer holds at the pleasure of the appointing board.

The case of Lease v Freeborn, Kansas 35 Pac. Reports 817 is typical of the holdings. People v. Jewett, 6 Cal. 291; People v. Hill, 7 Cal. 97; People v. Freese, 76 Cal. 633, 18 Pac. 812; Mechem Pub. Off. 385.

It is well settled by the authorities that it is only where no term or tenure is fixed by the constitution or the statute that an officer holds at the pleasure of the appointing power. Jacques v. Little, 51 Kan. 300, 33 Pac. 196; Mechem Pub. Off. 445, 454; 19 Amer. & Eng. Enc. Law, pp. 562 f, 562 g; State v. Board of Police Com'rs. 88 Mo. 144, 19 N. W. 824; Throop Pub. Off. 341.

Of course, any trustee may be removed " for good cause shown" but this fact becomes a condition precedent, and the cause or causes enumerated must be alleged, and the party notified, and causes examined. State v. City of St. Louis, 90 Mo. 19, 1 S. W. 757; Page v. Hardin, 8 B. Mon. 648, 672; 1 Dill. Mun Corp (4th ed.) 240-256.

Sveinbjorn Johnson, Attorney General, and Geo. F. Shafer. Assistant Attorney General, for respondent.

The office was created by the legislature and, of course, the legislature might abridge the term by express words or the legislature might specify an event upon the happening of which the term should end. People ex rel. Gere v. Whitlock, 92 N. Y. 190, 198.

In the case at bar the term is two years unless the board in its discretion should decide to cut it short and abridge it. This has been done by the Board of University and School Lands and was done on Saturday, April 8th, and of this the defendant and appellant cannot justly complain.

We take the position that the phrase in our statute "subject to removal by the board," and the phrase in the South Dakota statute "unless sonoer removed by him" mean by necessary implication one and the same thing, namely, they imply a discretion in the appointing power to remove at discretion and without specifying the constitutional causes required in the cases referred to in §§ 196 and 197 of the state constitution.

See State v. Kipp, supra, which we believe is on all fours in point and decisive of this case. See also People ex rel. Gere v. Whitlock, supra, and State ex rel Little v. Mitchell, 33 Pac. 104.

So, where the statute authorizing the appointment contains a reservation of the right of removal without preferring charges and this power is exercised by the removal of the incumbent and the appointment of another in his stead, the right of the former to the office will cease. State v. Somers, 53 N. W. 146; Townsend v. Kurtz, 83 Md. 331; 34 Atl. 1123.

BRONSON, J. This is a proceeding of mandamus involving the office of Commissioner of University and School Lands. The trial court found that the relator was entitled to the office. The defendant has appealed from the order.

The facts are not disputed. They are as follows: The defendant was appointed Commissioner on September 1, 1921, for a period of two years. He qualified and took office. On April 8, 1922, the board by resolution removed the defendant, declared the office vacant, and thereafter appointed the relator to fill the same. No charges were preferred; no notice thereof served. The board assumed the power to declare such office vacant in its discretion without the necessity of preferring charges of misconduct, malfeasance, crime, or misdemeanor in office, habitual drunkenness or gross incompetency, and without making any findings that some or all of such charges were true.

The defendant maintains that he was appointed for a specific term; that the statute prescribes a specific term (§§ 285, 296, C. L. 1913); that he was not holding such office at the pleasure or discretion of the board; that in the absence of statutory authority the rule of the common law, and the rule applicable here, is that a public officer holding a definite term can be removed only for cause after notice and hearing. The relator contends that the term of the defendant was not for a definite two-year period, but is subject to the limitation "subject to removal by the board," which necessarily implies that the board, in its discretion, may sooner remove the Commissioner; that the legislature might abridge the term by express words, or might specify an event upon the happening of which the term would end. There is practically no controversy upon the law. It is practically conceded that a public officer, appointed for a definite term with a delegate power of removal granted to the appointive power, can only be removed for cause after notice and hearing. This is the rule of the common law. Hallgren v. Campbell, 82 Mich. 255, 46 N. W. 381, 9 L. R. A. 408, 21 Am. St Rep. 557; People v. Whitlock, 92 N. Y. 191. See Mechem on Public Officers, § 445.

It is likewise conceded that where a public officer is appointed for a term not designated, or indefinite, the appointing power may exercise its right of removal at its pleasure at any time without notice or hearing. State v. Archibald, 5 N. D. 359, 66 N. W. 234; 22 R. C. L. 562. In the former case the power of removal is conditional; in the latter, arbitrary, 29 Cyc. 1408. The office involved is statutory. It was wholly within the power of the legislature to prescribe the method of appointing and of removal. 22 R. C. L. 561; State ex rel. Wehe v. Frazier (N. D.) 182 N. W. 545. This legislative power of removal concerning a public office created by statute is not subject to the restrictions of the constitutional provisions concerning the removal of certain officers by impeachment or other officers upon stated grounds. Sections 196, 197, Const.; State v. Archibald, 5 N. D. 359, 379, 66 N. W. 234; State ex rel. Wehe v. Frazier, supra. The power of removal may be exercised in a manner prescribed by the legislature. State ex rel. Shaw v. Frazier, 39 N. D. 430, 434, 167 N. W. 510. Accordingly, the question presented upon this appeal is entirely one of statutory construction and interpretation. If the statute read, "Subject to removal for cause," or "subject to removal without cause," no difficulties would be apprehended in either construction or interpretation. Likewise, if the statute fixed specifically a term

for two years with an independent power of removal, otherwise stated, the difficulties of interpretation and construction would be less pronounced. However unpleasant the function may be, it nevertheless is made our duty to ascertain the legislative intent concerning the power of removal, which in the statute might have been fully and clearly expressed without doubt by the use of two simple words. This court may neither reverse a legislative policy nor confer a right of office unless the legislative intent appears so to do. People v. Woodruff, 32 N. Y. 355, 363.

The board of university and school lands was first created by chap. 25, Laws of 1890. This act gave the board full control of all public lands, and the investment of permanent funds derived therefrom. This act was supplemented by chap. 146, Laws of 1890, which granted to the board the control of school and university lands and the investment of funds arising therefrom. The legislature, 1893, amended the acts mentioned. It granted to the board the power to appoint a commissioner. The pertinent provisions are as follows:

"Section 3 *Authority.*—Subject to the provisions of article 9 of the constitution and the provisions of this act, such board shall have full control of the selecting, appraisement, sale, rental, disposal and management of all school and public lands of the state, and the investment of the permanent funds derived from the sale thereof, or from any other source, and shall have power to appoint a competent person to act as the general agent of the board in the performance of all their duties pertaining to the selection, sale, lease, contracting in any manner allowed by law, and the general management and control of all matters relative to the care and disposition of the public lands of the state, all of whose acts *at all times* shall be subject to the approval and supervision of the board, *and whose term of office shall at all times be subject to their immediate control.* The title of such agent shall be that of Commissioner of University and School Lands, and before entering upon his duties as such shall take the oath of civil officers and give a bond in the penal sum of ten thousand dollars ($10,000), with not less than two sureties, to be approved by the board; said bond to be recorded in the office of the Secretary of State and filed, when recorded, in the office of the State Auditor."

"Section 12. *Term of Office of Commissioner of University and School Lands.*—The first term of office of the commissioner provided for in this act, shall be for three years from the date of his appointment

or until his successor shall be appointed and qualified, and after the expiration of the first term, all succeeding terms shall be for two years. In case of vacancy by death, removal, resignation or any other cause, the Board of University and School Lands shall fill the same by appointment." Chap. 118, Laws of 1893.

For purposes of showing the authority granted, I have underscored some of the words in the statute quoted.

In 1893 the legislature provided for the appointment of a revising commission by the Governor. Each of the commissioners was required to qualify by taking an oath of office and filing the same with the Secretary of State. The law provided that such commissioners should hold their office for the term of two years, or until the duties prescribed shall be duly performed, unless sooner determined by law. It was made generally the duty of this commission to examine, revise, and codify the laws and to prepare the same for publication. Chap. 74, Laws of 1893.

In 1895 some seven different Codes, prepared by the Revising Commission, were introduced in the legislature as bills and enacted into laws By legislative act these Codes were not printed as session laws of the state. Chap. 26, Laws of 1895.

Among these Codes was the Political Code for the state of North Dakota. It is embodied in the Revised Codes of North Dakota for the year 1895. Sections 170 and 179 thereof read as follows:

"Section 170. *Board, Powers of.* Subject to the provisions of article 9 of the Constitution and the provisions of this article, such board shall have the full control of the selecting, appraisement, rental, sale, disposal and management of all school and public lands of the state, including the real property donated to the territory of Dakota under the provisions of chap. 104 of the Laws of 1883, except such as has been sold, and the investment of the permanent funds derived from the sale thereof, or from any other source and shall have power to appoint a competent person to act as the general agent of the board in the performance of all its duties pertaining to the selection, sale, leasing or contracting in any manner allowed by law, and the general control and management of all matters relating to the care and disposition of the public lands of the state, all of whose official acts shall be subject to the approval and supervision of the board. The title of such agent shall be Commissioner of University and School Lands, and before entering upon his duties as such he shall take the oath prescribed for civil officers and give a bond

in the penal sum of ten thousand dollars with not less than two sureties, to be approved by the board, and recorded in the office of the Secretary of State and filed, when recorded, in the office of the State Treasurer."

"Section 179. *Term of Office of Commissioner.* The first term of office of the Commissioner provided for in this article shall be for three years from the date of his appointment and until his successor is appointed and qualified and after the expiration of the first term, all succeeding terms shall be two years, and until his successor is appointed and qualified, subject to removal by the board. In case of vacancy by death, removal, resignation or any other cause, the board shall fill the same by appointment."

These sections constitute the present law. Sections 285 and 296, Compiled Laws of 1913.

This Political Code of North Dakota prepared by the Revising Commission was introduced as House Bill No. 165. The original bill is typewritten and bulky. The final bill was not engrossed or redrafted, but amendments made were incorporated in this original bill, in some cases by drawing lines through the typewritten words and inserting written words above or by additions and eliminations. An examination of the legislative journal discloses that many amendments were made to this Political Code on the floor of both houses. The bill was introduced by a joint committee of both houses appointed to consider the report of the Revision Commission. In the House, on February 25, 1895, the joint committee reported a recommendation that the bill do pass. The bill was then, on February 26, 1895, read the first and second times, and was referred to its third reading. It was made a special order of business, and came up for third reading. On February 27th the third reading was concluded. The bill was then considered for purposes of amendment. Several amendments were made. On March 1, 1895, it was passed by the House. It was received by the Senate on March 1st, and on the next day read the first and second times, and referred to the judiciary committee. On March 4, 1895, this committee recommended the bill for passage with many amendments. The committee report was adopted. On March 7, 1895, amendments to the bill were made on the floor of the Senate, and the bill was passed by the Senate. The bill then, on March 3, 1895, was reported to the House, with the statement that the amendments of the Senate were attached to the proper sections of the Code. The House did not concur in the amendments, but appointed a conference commit-

tee. On March 8th, the conference committee concurred in the Senate amendments, the report of the committee was adopted, and the bill was re-passed as amended. Thus it was finally enacted. This bill specifically repeals chap. 118, Laws of 1893.

Section 173 thereof, including both the original and the amended language, reads as follows:

"Section 173. Subject to the provisions of article 9 of the Constitution and the provisions of this article, such board shall have the full control of the selecting, appraisement, rental, sale, disposal and management of all school and public lands of the state including the real property donated to the territory of Dakota under the provisions of chap. 104 of the Laws of 1883, except such as has been sold, and the investment of the permanent funds derived from the sale thereof, or from any other source, and shall have power to appoint a competent person to act as the general agent of the board in the performance of all its duties pertaining to the selection, sale, leasing or contracting in any manner allowed by law and the general control and management of all matters relating to the care and disposition of the public lands of the state, all of whose *official* acts at all times shall be subject to the approval and supervision of the board, and who shall hold office during the pleasure of the board. The title of such agent shall be Commissioner of University and School Lands, and before entering upon his duties as such he shall take the oath prescribed for civil officers and give a bond in the penal sum of ten thousand dollars, with not less than two sureties, to be approved by the board and recorded in the office of the Secretary of State and filed, when recorded, in the office of the State Treasurer. (S. 3. Id.)"

Section 182 thereof reads as follows:

"Section 182. The first term of office of the Commissioner provided for in this *article* shall be for three years from the date of his appointment *and* or until his successor shall be is appointed and qualified, and after the expiration of the first term all succeeding terms shall be for two years, *and until his successor is appointed and qualified subject to removal by the board.* In case of vacancy by death, removal, resignation or any other cause, the board shall fill the same by appointment. (S. 12. Id.)"

In the above-quoted sections, the words with lines drawn through the same are thus in the original bill eliminated with pen and ink. They are

typewritten words. Italicized words are words written in the original bill with pen and ink. From an examination of the House Journal we have not been able to find that the amendments (by written words), thus made in §§ 173 and 182, were etiher reported by the legislative committees or adopted on the floor of either house.

Many amendments, however, were made to ths bill during its passage, as the legislative journals disclose; some were made to the original bill by drawing a line through a word in the bill and writing above, with pen and ink, the amendment. For instance, in the House Mr. Hanna moved that the pay of the clerk of the judiciary committee for the Senate should be amended by striking out the word "seven" and inserting, in lieu thereof, "five." H. J. p. 534. This was done in the original bill by drawing a line with pen and ink through "seven" and writing above such word "five."

Upon the facts thus stated what principles of statutory construction apply? The general presumption obtains that the codifiers did not intend to change the law as it formerly existed. Braun v. State, 40 Tex. Cr. R. 236, 49 S. W. 620, 622; U. S. v. Ryder, 110 U. S. 729, 740, 4 Sup. Ct. 196, 201, 28 L. ed.. 308. Changes made in the revision of statutes by alteration of the phraseology will not be regarded as altering the law unless there is a clear intent so to do. McDonald v. Hovey, 110 U. S. 619, 4 Sup. Ct. 142, 28 L. ed. 269; Becklin v. Becklin, 99 Minn. 307, 109 N. W. 243; Inhabitants of St. George v. Rockland, 89 Me. 43, 35 Atl. 1033; Taylor v. Caribou, 102 Me. 401, 67 Atl. 2, 4, 10 Ann. Cas. 1080; Schmidt v. U. S., 133 Fed. 257, 66 C. C. A. 389; Brown v. Randolph County Court, 45 W. Va. 827, 32 S. E. 165; East Boyer Tel. Co. v. Vail (Iowa) 129 N. W. 298; Piper v. Railroad, 75 N. H. 435, 75 Atl. 1041; Stearns v. Graham, 83 Vt. 111, 74 Atl. 486; State v. Holland, 117 Me. 288, 104 Atl. 159; King v. Smith, 91 N. J. Law, 648, 103 Atl. 191; Greenfield v. Plumbing Co., 17 Ga. App. 637, 87 S. E. 912; State v. Bushnell, 95 Ohio St. 203, 116 N. E. 464, 466; Investment Co. v. Railway (D. C.) 226 Fed. 976; Jones v. State, 10 Ala. App. 152, 65 So. 411; Dennis v. School Dist., 166 Iowa, 744, 148 N. W. 1007; 36 Cyc. 1168. In ascertaining the intention of language used in a code revision, reference may be had to the prior statute for the purpose of ascertaining the legislative intent. Becklin v. Becklin, supra; Stevens v. Bridge Co., 115 Me. 402, 99 Atl. 94.

Considering these principles and presumptions, it is clear that Chap.

118, laws of 1893, granted an arbitrary power of removal, and made the term of the Commissioner depend upon a limitation. It is also clear that the language of the original typewritten bill likewise grants an arbitrary power of removal, making the office of the Commissioner dependent upon the pleasure of the board.

The legislative intent expressed in the original statute was clear, the language used in the original typewritten bill is also clear, and, if so adopted, would have expressed clearly the legislative intent. This language in the original typewritten bill was changed by eliminating the phrase "and who shall hold office during the pleasure of the board" in § 173 and by adding to § 182 the pertinent words, "subject to removal by the board." If these changes had been made by legislative committees considering the bill or upon the floor of either house, potent force would be given to the argument that there was a legislative intent to prescribe a conditional, instead of an arbitrary, right of removal. State v. Mitchell, 50 an. 289, 33 Pac. 104, 20 L. R. A. 306; People v. Whitlock, 92 N. Y. 191. However, an investigation of the legislative record has failed to disclose any such action taken by the Legislature. Accordingly, there exists no showing of any legislative intent to change the law, unless it be inferred that the revisioners intended to change the law, or that the committee who considered the bill before its introduction likewise intended to change the law. This, however, is a matter of proof and not of inference. Changes were made in the original bill. It is the duty of the court to ascertain, not to make, legislative intent. The legislative intent in the original law and in the original bill appears clear. To construe the present statute as urged by the defendant would require a reversal of the legislative policy as disclosed by the original act. Following the presumptions and principles hereinbefore stated, the change of language employed in the revision of the statute does not indicate, presumptively, any legislative intent to reverse the legislative policy. The consideration of the legislative history discloses no legislative intent to the contrary. The changes made can as well be explained upon the grounds that they were made for the purposes of conciseness and to place the power of removal in that section of the statute that concerned the Commissioner's term, as that the change was made to reverse the legislative policy. We are of the opinion, accordingly, that no legislative intent has been shown to change the theretofore existing law when it

was revised, and that therefore an arbitrary right of removal was preserved as it existed under chap. 118, Laws of 1893. The order of the trial court should be and is affirmed, without costs.

BIRDZELL, C. J., and CHRISTIANSON, J., concur.

GRACE, J. (specially concurring). It reasonably appears to my mind that the result arrived at in the principal opinion accords to a considerable degree with the reasoning contained in my dissenting opinion' in the case of State ex rel. Wehe v. Frazier (N. D.) 182 N. W. 545.

I concur in the result.

ROBINSON, J. (specially concurring). Under the former state administration defendant-appellant was Commissioner of University and School Lands; under the present administration he was removed without cause, and the relator was appointed as his successor. This is an appeal from the judgment sustaining the removal. The appeal is based on two grounds: (1) That the appellant is a public officer; (2) that a public officer may not be removed without cause. By statute the Governor, Secretary of State, State Auditor, Attorney General, and Superintendent of Public Instruction do constitute a board of university and school lands. Comp. Laws, § 284. The board has full control of the appraisal, rental, sale, and management of the lands, and' has power to appoint a person to act as agent of the board and to perform all its duties, and all his official acts are subject to the approval and supervision of the ·board. Section 285. The statute is not materially different from the original act. Laws 1893, chap. 118. The Commissioner is appointed for two years, *"subject to removal by the board."* Now the term *"office"* implies a delegation of a portion of the sovereign power and the possession of it by a person filling the office. Every office in the constitutional meaning of the term implies an authority to exercise some portion of the sovereign power, either in the making, execution, or administration of the laws. State of Florid« v. Howker, 39 Fla. 477, 486, 22 South. 721, 63 Am. St. Rep. 174; 36 Cyc. 852, note 40; 39 Cyc. 1363, note 17—19.

A public office imports an officer in whom is reposed some portion of the sovereign power of the state, and of necessity having some connection with the legislative, judicial, or executive department. Montgomery v. State, 107 Ala. 381, 18 South. 157; State v. Watkins, 3 Mo. 481; State ex rel. Wingate v. Valle, 41 Mo. 31.

Clearly a person who acts as a mere agent or underling, who can do nothing of himself, whose every act is subject to approval by another, who exercises no part of the sovereign power, is not a public officer. The appellant was not a public officer. He was merely a special agent or employee appointed for two years, "subject to removal by the board." There is no reason why the courts should amend the statute by construction to make it read, "subject to removal for cause." And there are many good reasons why the board should have a right to remove its agent without cause and why the board should not be compelled to do business through an agent whom they may distrust or an agent in any way unfriendly to them, their policies or politics. It might be wholly different if the agent were appointed to do some independent business, and not merely to act in subservience to and subject to the approval and control of another. Surely the case presents no occasion for circumlocution.

Affirmed.