## SCHMIDT v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 24, 1904.)

No. 1,053.

1. UNITED STATES REVISED STATUTES—RULES OF CONSTRUCTION.

It is a settled rule that, in the construction of the Revised Statutes of the United States, a mere change in the phraseology of a prior statute will not be regarded as altering the law, unless it is clear that such was the intent; and it is another canon of construction that, in determining the meaning of an ambiguous provision in the revision, the courts may refer to the original statute from which the section was taken, to ascertain from its language and context to what class of cases the provision was intended to apply.

2. NATURALIZATION—PERJURY IN PROCEEDINGS IN STATE COURT—JURISDICTION OF FEDERAL COURT TO PUNISH.

The provision of Act March 3, 1903, c. 1012, § 39, 32 Stat. 1222 [U. S. Comp. St. Supp. 1903, p. 191], which imposes a punishment upon any person "who in any naturalization proceeding knowingly procures or gives false testimony as to any material fact," may be deemed an amendment to Rev. St. § 5395 [U. S. Comp. St. 1901, p. 3654], which provides a lesser penalty for the same offense; and a person who knowingly swears falsely to a material fact in naturalization proceedings in a state court may be indicted and punished for the perjury thereunder in a federal court. By section 4 of Act July 14, 1870, c. 254, 16 Stat. 255, of which act said section 5395 was a part, such jurisdiction was expressly given to the federal court; and although in the Revised Statutes the two sections were classified separately, and section 4, which became section 5429 [U. S. Comp. St. 1901, p. 3670], was, in terms, made to apply to the five immediately preceding sections, it was not intended thereby to lessen the jurisdiction under section 5395, which, in terms, extends to "all cases where oath or affidavit is made or taken under or by virtue of any law relating to the naturalization of aliens or in any proceeding under such laws." Ross, Circuit Judge, dissenting.

3. SAME—PROSECUTION FOR PERJURY—EVIDENCE.

The provision of Act March 3, 1903, c. 1012, § 39, 32 Stat. 1222 [U. S. Comp. St. Supp. 1903, p. 191], that all courts shall, before issuing a final order or certificate of naturalization, "cause to be entered of record the affidavit of the applicant and of his witnesses, so far as applicable, reciting and affirming the truth of every material fact requisite to naturalization," does not limit the evidence which may be taken in the proceeding to the affidavits so entered of record; and, on the trial of a person for perjury committed in such a proceeding, oral evidence is admissible to show the commission of the offense.

4. SAME.

On the trial of a defendant for perjury committed in a naturalization proceeding, his signature to affidavits filed in the proceeding is admissible to prove the fact that he was a witness therein, although such affidavits, when signed, were in blank.

5. SAME—RECORD OF PROCEEDING AS EVIDENCE—DEFECTIVE FINAL ORDER.

In a prosecution for perjury committed in a naturalization proceeding, where the record of the court therein, including the final order, was admitted in evidence without objection, it was proper for the court to instruct the jury that such record should be taken as establishing the facts therein stated, although the final order may have been defective in form, in failing to recite the making and recording of the affidavits required by section 39 of Act March 3, 1903, c. 1012, 32 Stat. 1222 [U. S. Comp. St. Supp. 1903, p. 191], for which defect it is declared void by said section; it being doubtful, moreover, whether it is intended that such order shall be void, except for the purpose of proving citizenship.

133 F.—17

6. CRIMINAL LAW—INSTRUCTIONS—EFFECT OF FAILURE TO PROVE MOTIVE.

The absence of a motive shown for the commission of a crime may properly be considered by the jury only as bearing on the question whether the offense was committed by the defendant, and, where its commission by him is clearly proved by direct and undisputed evidence, the fact that his motive is not shown is immaterial, and the refusal of an instruction that the jury shall take such fact into consideration is not error.

In Error to the Circuit Court of the United States for the Southern Division of the District of Washington.

John L. Sharpstein, for plaintiff in error.

Jesse A. Frye, U. S. Atty., and Edward E. Cushman, Asst. U. S. Atty.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was indicted and prosecuted in the United States Circuit Court for the District of Washington upon an indictment containing ten counts, in each of which he was charged with swearing falsely in certain naturalization proceedings pending in the superior court of the state of Washington for Walla Walla county. The ten counts in the indictment were all in the same form, except as to the name of the person applying to be naturalized; and it was charged in each thereof that the plaintiff in error did willfully, falsely, corruptly, feloniously, and contrary to his oath, swear, testify, depose, and make affidavit before the said court; and then followed the specification of the false testimony so given. The plaintiff in error was tried before a jury upon this indictment, and was convicted.

The principal question presented on the writ of error is whether one who swears falsely in a naturalization proceeding in a court of a state may be indicted and punished in a court of the United States, under the provisions of section 39 of the act of March 3, 1903, c. 1012, 32 Stat. 1222 [U. S. Comp. St. Supp. 1903, p. 191], which, among other provisions, denounces a penalty against any person "who in any naturalization proceeding knowingly procures or gives false testimony as to any material fact." This act may be deemed an amendment to section 5395 of the Revised Statutes [U. S. Comp. St. 1901, p. 3654], in that it increases the penalty provided for in that section. Section 5395 reads as follows:

"In all cases where oath or affidavit is made or taken under or by virtue of any law relating to the naturalization of aliens, or in any proceeding under such laws, any person taking or making such oath or affidavit who knowingly swears falsely, shall be punished by imprisonment not more than five years nor less than one year, and by fine of not less than one thousand dollars."

This statute would seem to be sufficiently comprehensive to include all cases of false swearing in naturalization proceedings, committed in whatever court. That such is its intention is shown by the prior legislation on the same subject. The section is taken from the act of Congress of July 14, 1870, c. 254, 16 Stat. 254, entitled, "An act to amend the naturalization laws, and to punish crimes against the same,

¶ 6. See Criminal Law, vol. 14, Cent. Dig. §§ 23, 1271.

and for other purposes." The first four sections of the act relate specifically to offenses against the naturalization laws. Section 1 provides for the punishment of perjury in all cases—

"Where any oath, affirmation, or affidavit shall be made or taken under or by virtue of any act or law relating to the naturalization of aliens, or in any proceedings under such acts or laws."

Section 4 (Act July 14, 1870, c. 254, 16 Stat. 255) enacts that:

"The provisions of this act shall apply to all proceedings had or taken or attempted to be had or taken before any court in which any proceeding for naturalization shall be commenced, had, or taken, or attempted to be commenced, and the courts of the United States shall have jurisdiction of all offenses under the provisions of this act, in or before whatsoever court or tribunal the same shall have been committed."

These words are clear, and leave no room to doubt that jurisdiction was thereby given to the United States courts of offenses committed against the naturalization laws in any court, whether state or federal.

The act of 1870 was an amendment to the naturalization laws. Those laws contained a provision conferring on state courts jurisdiction in naturalization proceedings. The amendment applied to all the naturalization laws, and its intent was to make punishable in the courts of the United States all crimes committed against those laws. Being an amendment to all of those laws, it is its fair construction that section 1 was intended to include offenses against the naturalization laws committed by false swearing in the state courts, and to confer jurisdiction on the federal courts to deal therewith. If so, section 4 of the amendment was not necessary to make effective that intent, and may be deemed surplusage. When the act of 1870 was carried into the Revised Statutes, section 1 thereof was severed from its connection with the other three sections referred to, and was placed in chapter 4, tit. 70, which deals with "crimes against justice." Sections 2, 3, and 4 were placed in chapter 5, under the title, "Crimes Against the Operation of the Government," and are therein numbered 5424–5429, inclusive [U. S. Comp. St. 1901, pp. 3668–3670]. Section 5429 reads as follows:

"The provisions of the five preceding sections shall apply to all proceedings had or taken, or attempted to be had or taken, before any court in which any proceeding for naturalization shall be commenced or attempted to be commenced."

Section 4 is thus specifically repeated in the Revised Statutes, and therein made to refer to the five preceding sections only, and it does not in terms refer to section 5395. It is argued from this that it was the intention of Congress, by the revision, to exclude section 5395 from the operation of section 5429, and thereby to remove from the jurisdiction conferred by the former section the offenses therein described against the naturalization laws committed in state court proceedings. Was such the intention of Congress in adopting the Revised Statutes? Did Congress by the revision make or intend to make any change in the existing law?

It is not to be inferred that Congress by the revision intended to change the existing statute so as to distinguish between two classes of offenses against the naturalization laws, and to make offenses of one

class committed in state court proceedings punishable in the federal courts, and exclude another class of such offenses, unless the intention so to do has been clearly expressed. The act under which the statutes were revised (Act June 27, 1866, c. 140, 14 Stat. 75 [U. S. Comp. St. 1901, p. 3755]), in section 2, provides that:

"The commissioners shall bring together all statutes and parts of statutes which, from similarity of subject, ought to be brought together, omitting redundant or obsolete enactments, and making such alterations as may be necessary to reconcile the contradictions, supply the omissions, and amend the imperfections of the original text."

Section 5600 of the Revised Statutes [U. S. Comp. St. 1901, p. 3751] provides that:

"The arrangement and classification of the several sections of the revision have been made for the purpose of a more convenient and orderly arrangement of the same, and therefore no inference or presumption of a legislative construction is to be drawn by reason of the title, under which any particular section is placed."

The Supreme Court, in construing the Revised Statutes, has repeatedly affirmed the settled rule that a change of phraseology in a revision will not be regarded as altering the law, where it had been well settled by plain language in the statutes, unless it was clear that such was the intent. Said the court in McDonald v. Hovey, 110 U. S. 619, 629, 4 Sup. Ct. 142, 146, 28 L. Ed. 269:

"So upon a revision of statutes a different interpretation is not to be given to them without some substantial change of phraseology—some change other than what may have been necessary to abbreviate the form of the law."

And the court cited with approval In re Murphy, 23 N. J. Law, 180, where, in construing several statutes which had been consolidated, a proviso in one of them broad enough in its terms to affect the whole consolidated law was held to affect only those sections with which it had been originally connected. In United States v. Ryder, 110 U. S. 729, 740, 4 Sup. Ct. 196, 201, 28 L. Ed. 308, the court said:

"It will not be inferred that the Legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed."

To the same effect is Logan v. United States, 144 U. S. 263, 302, 12 Sup. Ct. 617, 36 L. Ed. 429. A case in point is Doyle v. Wisconsin, 94 U. S. 50, 24 L. Ed. 64, in which it was held that section 1007 of the Revised Statutes [U. S. Comp. St. 1901, p. 714], which provides that, where a writ of error may operate as a writ of supersedeas, execution shall not issue until ten days after the rendition of the judgment, has reference only to the courts of the United States. This conclusion was reached upon a consideration of the statutes as they stood before the revision. The court, by Chief Justice Waite, said, "The Revised Statutes are a revision and consolidation of the old statutes, rather than an enactment of new;" and, after quoting section 5600 [page 3751], he added, "This makes it proper that we should look to the original act to ascertain the legislative intent in cases of doubt." In the recent case of United States v. Severino (C. C.) 125 Fed. 949, Thomas, District Judge, in a carefully considered opinion, held that, notwithstanding

the changes in revision, section 5395 still conferred on the federal courts jurisdiction of a perjury committed in naturalization proceedings in a state court in the procedure prescribed by Congress.

Again, it is an established canon of construction that, in finding the meaning of an ambiguous statute in the revision, the courts are permitted to refer to the original statute from which the section was taken, to ascertain from its language and context to what class of cases the provision was intended to apply. The Conqueror, 166 U. S. 122, 17 Sup. Ct. 510, 41 L. Ed. 537; United States v. Bowen, 100 U. S. 508, 25 L. Ed. 631; Myer v. Car Company, 102 U. S. 11, 26 L. Ed. 59; United States v. Lacher, 134 U. S. 626, 10 Sup. Ct. 625, 33 L. Ed. 1080. In the case last cited the court said:

"If there be any ambiguity in section 5467 [U. S. Comp. St. 1901, p. 3691], inasmuch as it is a section of the Revised Statutes, which are merely a compilation of the statutes of the United States, revised, simplified, arranged, and consolidated, resort may be had to the original statute from which the section was taken to ascertain what, if any, change of phraseology there is, and whether such change should be construed as changing the law."

Section 5395 refers to "all cases" of false oaths made "under or by virtue of any law relating to the naturalization of aliens or in any proceeding under such laws." If there be any ambiguity as to the meaning of the words "any law" and "any proceeding," it is dispelled by the language of the act of July 14, 1870, from which it is taken. In view of these considerations, we entertain no doubt that it was the intention of Congress, in enacting the statute of March 3, 1903, c. 1012, 32 Stat. 1222 [U. S. Comp. St. Supp. 1903, p. 191], to recognize the jurisdiction conferred upon the federal courts by the act of July 14, 1870, and the Revised Statutes. Further evidence of that intention is found in the terms of the act of 1903, where it is provided that:

"The court in which such conviction is had shall thereupon declare the order or decree and all certificates admitting such person to citizenship null and void. Jurisdiction is hereby conferred on the courts having jurisdiction of the trial of such offense to make such adjudication."

Error is assigned to the admission of oral evidence offered on the part of the prosecution to prove the commission of the offense. It is said that under the act of Congress of March 3, 1903, which provides that all courts shall, before issuing the final order or certificate of naturalization, "cause to be entered of record the affidavit of the applicant and of his witnesses, so far as applicable, reciting and affirming the truth of every material fact requisite for naturalization," the law requires the testimony to be in the form of an affidavit, that the written affidavit is the best evidence of its own contents, and that parol evidence is inadmissible without accounting for the nonproduction of such written evidence. But the statute does not so limit the scope of the investigation in naturalization proceedings. The act requires the court "to make careful inquiry into such matters," and adds thereto the requirement that before issuing the final order the affidavit of the applicant and his witnesses, so far as applicable, shall be entered of record. This leaves it open to the court to take oral testimony and to sift the truth of the evidence upon any question material to the investigation, so long as the evidence of the material facts is embodied in the form of an affi-

davit to go upon the record. There was no error, therefore, in over-ruling the objection to the oral testimony.

Error is assigned to the admission in evidence of the affidavits of the affiants in the naturalization proceedings. Objection to their admission was made on the trial on the ground that they were not affidavits at the time when they were signed, but were blanks, and were subsequently filled in by the clerk of the state court. The trial court sustained the objection so far as the substance of the affidavits was concerned, but admitted the signatures in evidence as tending to prove that the affiants were in the state court as witnesses. There was no error in this, and it is not conceivable that the rights of the plaintiff in error could have been prejudiced thereby.

It is contended, further, that the court erred in admitting in evidence the final orders of naturalization, for the reason that the same are void. The ground upon which the orders are claimed to be void is that they were not framed in compliance with the act of 1903, which declares that all final orders which do not show upon their face that the affidavits have been made and recorded shall be null and void. These orders did not so show or recite, but they were entered at the bottom of the page on which in each case the appropriate affidavits were recorded. It is a sufficient answer to this objection to point to the fact that the orders were read in evidence without objection on the part of the plaintiff in error.

It is contended, further, that the court erred in instructing the jury as follows:

"The record of the superior court which was read to you contains recitals of what the proceedings were. That record is verified by the signature of the presiding judge, and it is to be taken as showing that what it contains is a true recital of what did occur, so far as showing what occurred. The record, like all other material matters, is submitted to you with all the testimony as to what the facts were—what actually did take place."

To this charge the plaintiff in error excepted. It is urged that, the judgment being null and void, it could not be considered by the jury for any purpose. No such objection to the orders was specified at any time in the trial court. On the other hand, the orders were, as we have seen, admitted in evidence without objection. Being so admitted in evidence, it was proper for the court to instruct the jury concerning their force and effect. The proceedings in the state court, whatever may be said of the defects of the final orders, were not void. That court had jurisdiction of the subject-matter of the proceedings and of the parties. The defects in the final orders were irregularities for which the statute declared them null and void. It may be doubtful whether it was the intention of the statute to avoid such final orders or to declare them voidable, for immediately following its provision in that regard is the further provision conferring jurisdiction on the federal courts to declare such defective orders null and void. The most that can be said of the effect of the statute is that the orders were deprived of all efficacy for the purpose of adjudicating or proving citizenship. The irregularities were defects in form, and such as might have been remedied by entering new orders in compliance with the law. The effect of the statute, it would seem, is not to deny to such defective

order admissibility in evidence when it is offered as matter of inducement to perjury, to show the pendency of the proceeding, the jurisdiction of the court, or the giving of the testimony and its materiality. 22 Enc. of Law (2d Ed.) 692, and cases there cited. It was for this purpose that the trial court directed the jury to consider the final orders; that is, as tending to show what occurred. The plaintiff in error had admitted that these orders were properly to be considered by the jury, and he had waived any right he may have had to object thereto, by submitting to the court, before the charge was given, a written request for an instruction as follows: "The orders read in evidence from the journal of naturalization are to be considered by you only as tending to prove the fact that such naturalization proceedings were had." This instruction was properly denied. If the orders were lawfully admitted in evidence and read to the jury, their effect was not to be narrowed as indicated in the proffered charge. If they had any effect whatever, it was to tend to establish the facts for which they were admitted in evidence.

Error is assigned to the refusal of the court to instruct the jury—

"That, when the evidence fails to show any motive to commit the crime charged on the part of the accused, this is a circumstance in favor of his innocence; and in this case, if the jury find upon careful examination of all the evidence that it fails to show any motive on the part of the accused to commit the crime charged against him, then this is a circumstance which the jury ought to consider, in connection with all the other evidence in the case, in making up their verdict."

This instruction so requested, while proper in some cases, had no rightful application to the evidence in the case before the court. It was clearly proven by the direct testimony of witnesses, and it was not disputed, that the plaintiff in error went to these aliens, who had not been in the United States the requisite time to entitle them to citizenship, and actively induced them to appear before the court and take out their final papers, and in that connection falsely testified before the court, as charged in the indictment. The jury may inquire into the motive of a defendant when it is necessary to resort to it in arriving at the ultimate fact that it was he who committed the crime charged. The motive then becomes an aid in completing the proof of the commission of the act; and in such a case it is proper to charge the jury that the absence of motive, if they fail to find one, may be taken into consideration in determining the question whether the crime was committed by the accused or by some other. The instruction is particularly applicable to cases where the proof consists in circumstantial evidence. In such a case it may be controlling. People v. Fitzgerald, 156 N. Y. 258, 50 N. E. 846. That the plaintiff in error did falsely testify was not denied. His motive in so doing was not disclosed, and it was not necessary that it should be. While the prosecution is never required to prove a motive for the crime, it is always permitted to do so. In the present case the proof was not circumstantial, but was direct, and was undisputed. To have given the charge requested would have been to tell the jury that they were at liberty, in determining whether they would give credence to the positive and uncontroverted testimony of wit-

nesses to the overt act of the plaintiff in error, to be influenced by the fact that they failed to find a motive for his act.    Such is not the law.
The judgment of the District Court is affirmed.

ROSS, Circuit Judge (dissenting).   The plaintiff in error was indicted and prosecuted for, and convicted of, the crime of perjury, committed in the superior court of the state of Washington for Walla Walla county, in 10 certain naturalization proceedings then and there pending. One of the questions presented by the present appeal, and the first to be considered and disposed of, is in respect to the jurisdiction of the court below over the offense.

The same question was before Judge Thomas, in the Southern District of New York, in the recent case of United States v. Severino (C. C.) 125 Fed. 949, and was by him quite fully considered, in an opinion in which the jurisdiction of the federal courts was sustained. He reached the conclusion, in which I quite agree—

"That state courts, while entertaining jurisdiction in naturalization proceedings, remain state courts, and that perjury committed by a witness in such a proceeding is punishable by the sovereignty whose justice it offends [that is, the state court], and that the federal court cannot entertain jurisdiction in the absence of a federal statute conferring it."

Judge Thomas, in the case cited, further held that section 5395 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3654] is applicable to perjuries committed in naturalization proceedings in the state courts, and therefore sustained the federal jurisdiction of such offenses.   In considering that question, it was said by the learned judge:

"At the first view there would be hesitation in concluding that Congress intended to punish perjuries in naturalization proceedings, committed in a court foreign to its governmental jurisdiction, against another and independent sovereignty, thereby making its penal statutes applicable to offenses committed against the justice of a separate state. But it is precisely what at a time, and for a time at least, it did do, in plainest terms, by Act July 14, 1870, c. 254, 16 Stat. 254 [U. S. Comp. St. 1901, p. 3654]."

The first subdivision of section 2165, tit. 30, of the Revised Statutes [U. S. Comp. St. 1901, p. 1329], embodying the naturalization laws, is as follows:

"An alien may be admitted to become a citizen of the United States in the following manner, and not otherwise: First. He shall declare on oath, before a circuit or district court of the United States, or a district or supreme court of the territories, or a court of record of any of the states having common-law jurisdiction and a seal and clerk, two years at least prior to his admission, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and, particularly, by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject."

By its act of July 14, 1870, c. 254, 16 Stat. 254 [U. S. Comp. St. 1901, p. 3654], Congress amended those laws in certain particulars, and for the first time made specific provision for the punishment of crimes committed against them; declaring, among other things, in its first section—

"That in all cases where any oath, affirmation, or affidavit shall be made or taken under or by virtue of any act or law relating to the naturalization of

aliens, or in any proceedings under such acts or laws, and any person or persons taking or making such oath, affirmation, or affidavit, shall knowingly swear or affirm falsely, the same shall be deemed and taken to be perjury, and the person or persons guilty thereof shall upon conviction thereof be sentenced to imprisonment for a term not exceeding five years and not less than one year, and to a fine not exceeding one thousand dollars"; and, in its fourth section, "that the provisions of this act shall apply to all proceedings had or taken, or attempted to be had or taken, before any court in which any proceeding for naturalization shall be commenced, had, or taken, or attempted to be commenced; and the courts of the United States shall have jurisdiction of all offenses under the provisions of this act, in or before whatsoever court or tribunal the same shall have been committed."

The provisions of the act of July 14, 1870, were subsequently revised, amended, and carried into the Revised Statutes as sections 5395, 5424, 5425, 5426, 5427, 5428, and 5429 [U. S. Comp. St. 1901, pp. 3654, 3668–3670], which read as follows:

"Sec. 5395. In all cases where any oath or affidavit is made or taken under or by virtue of any law relating to the naturalization of aliens, or in any proceedings under such laws, any person taking or making such oath or affidavit who knowingly swears falsely, shall be punished by imprisonment not more than five years, nor less than one year, and by a fine of not more than one thousand dollars."

"Sec. 5424. Every person applying to be admitted a citizen, or appearing as a witness for any such person, who knowingly personates any other person than himself, or falsely appears in the name of a deceased person, or in an assumed or fictitious name, or falsely makes, forges, or counterfeits any oath, notice, affidavit, certificate, order, record, signature, or other instrument, paper, or proceeding required or authorized by any law relating to or providing for the naturalization of aliens; or who utters, sells, disposes of, or uses as true or genuine, or for any unlawful purpose, any false, forged, ante-dated, or counterfeit oath, notice, certificate, order, record, signature, instrument, paper, or proceeding above specified; or sells or disposes of to any person other than the person for whom it was originally issued any certificate of citizenship, or certificate showing any person to be admitted a citizen, shall be punished by imprisonment at hard labor not less than one year, nor more than five years, or by a fine of not less than three hundred nor more than one thousand dollars, or by both such fine and imprisonment.

"Sec. 5425. Every person who uses, or attempts to use, or aids, or assists, or participates in the use of any certificate of citizenship, knowing the same to be forged, or counterfeit, or ante-dated, or knowing the same to have been procured by fraud or otherwise unlawfully obtained; or who, without lawful excuse, knowingly is possessed of any false, forged, ante-dated, or counterfeit certificate of citizenship, purporting to have been issued under the provisions of any law of the United States relating to naturalization, knowing such certificate to be false, forged, ante-dated, or counterfeit, with intent unlawfully to use the same; or obtains, accepts, or receives any certificate of citizenship known to such person to have been procured by fraud or by the use of any false name, or by means of any false statement made with intent to procure, or to aid in procuring, the issue of such certificate, or known to such person to be fraudulently altered or ante-dated; and every person who has been or may be admitted to be a citizen who, on oath or by affidavit, knowingly denies that he has been so admitted, with intent to evade or avoid any duty or liability imposed or required by law, shall be imprisoned at hard labor not less than one year nor more than five years, or be fined not less than three hundred dollars nor more than one thousand dollars, or both such punishments may be imposed.

"Sec. 5426. Every person who in any manner uses for the purpose of registering as a voter, or as evidence of a right to vote, or otherwise, unlawfully, any order, certificate of citizenship, or certificate, judgment, or exemplification, showing any person to be admitted to be a citizen, whether heretofore or hereafter issued or made, knowing that such order or certificate, judgment,

or exemplification has been unlawfully issued or made; and every person who unlawfully uses, or attempts to use, any such order or certificate, issued to or in the name of any other person, or in a fictitious name, or the name of a deceased person, shall be punished by imprisonment at hard labor not less than one year nor more than five years, or by a fine of not less than three hundred nor more than one thousand dollars, or by both such fine and imprisonment.

"Sec. 5427. Every person who knowingly and intentionally aids or abets any person in the commission of any felony denounced in the three preceding sections, or attempts to do any act therein made felony, or counsels, advises, or procures, or attempts to procure, the commission thereof, shall be punished in the same manner and to the same extent as the principal party.

"Sec. 5428. Every person who knowingly uses any certificate of naturalization heretofore granted by any court or hereafter granted, which has been or may be procured through fraud or by false evidence, or has been or may be issued by the clerk, or any other officer of the court without any appearance and hearing of the applicant in court and without lawful authority; and every person who falsely represents himself to be a citizen of the United States, without having been duly admitted to citizenship, for any fraudulent purpose whatever, shall be punishable by a fine of not more than one thousand dollars, or be imprisoned not more than two years, or both.

"Sec. 5429. The provisions of the five preceding sections shall apply to all proceedings had or taken, or attempted to be had or taken, before any court in which any proceeding for naturalization may be commenced or attempted to be commenced."

It will be observed that, in these revised and amended sections, Congress was dealing specifically with crimes against the naturalization laws. By section 5429 it expressly made the provisions of sections 5424, 5425, 5426, 5427, and 5428 applicable to "all proceedings had or taken, or attempted to be had or taken, before any court [federal or state] in which any proceeding for naturalization may be commenced or attempted to be commenced." Thus having its attention specifically directed to the subject, Congress, in revising and amending the provisions of the act of July 14, 1870, omitted the provision of section 4 of that act conferring upon the courts of the United States "jurisdiction of all offenses under the provisions of this act in or before whatsoever court or tribunal the same shall have been committed," and made applicable to naturalization proceedings had in the state courts only the provisions of sections 5424, 5425, 5426, 5427, and 5428, which do not include the crime of perjury committed in such proceedings in a court of a state. That action of Congress was in accord with the rule declared by the Supreme Court in Loney's Case, 134 U. S. 372, 10 Sup. Ct. 584, 33 L. Ed. 949, where it is said that "the power of punishing a witness for testifying falsely in a judicial proceeding belongs peculiarly to the government in whose tribunals that proceeding is had."

I am of opinion that the court below was without jurisdiction of the alleged offense, for which reason I think the judgment should be reversed, with directions to that court to dismiss the indictment.