THOMAS M. STEVENS, Collector,

*vs.*

DIXFIELD AND MEXICO BRIDGE COMPANY.

Oxford.   Opinion November 18, 1916.

*Double taxation. Method of taxing real estate belonging to toll bridge companies. Rule as to taxing stock of toll bridge companies.*

In an action of debt brought by the collector of the town of Mexico against a toll bridge corporation to recover the tax upon that portion of the bridge property situated in said town and assessed as real estate, it is
*Held;*
1. That under R. S. chap. 9, sec. 14, the stock of toll bridge corporations must be taxed as personal property to the owners thereof.
2. That the enactment upon which this section is based is sec. 2 of chap. 187 of the Public Laws of 1846, which provided that no part of the general

tax act of 1845 "shall be deemed to authorize or require the taxing of toll bridges as real estate in the towns where the same are situated, but the stock in such bridges shall be taxed as personal property to the several owners in the towns where such owners reside."

3. That to tax the capital stock to the owners and the property itself to the corporation would be in effect double taxation which is contrary to legislative policy.

4. That the tax in question was unauthorized, and cannot be collected Kittery v. Portsmouth Bridge, 78 Maine 93, is overruled.

Action of debt by the collector of taxes of the town of Mexico, brought under section 28, chapter 10 of the Revised Statutes of Maine. Defendant pleaded general issue, and case was reported to Law Court upon an agreed statement of facts. Judgment for defendant.

Case stated in opinion.

*Lucian W. Blanchard,* for plaintiff.

*Drummond & Drummond* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

CORNISH, J. This is an action of debt brought by the collector of the town of Mexico against the defendant toll bridge company to recover the tax assessed against the corporation for the year, 1915. The assessment was upon the real estate of the defendant, consisting of a toll house and lot, and the east half of the toll bridge across the Androscoggin river connecting the towns of Mexico and Peru. The defendant was chartered under Pr. and Sp. L., 1887, chap. 111, as amended by Pr. and Sp. L., 1893, ch. 402, and was organized on December 27, 1894, with a capital stock of $25,000. The bridge was built in 1895 and has been maintained and operated as a public toll bridge since that time.

It is admitted that all statutory requirements as to the assessment, commitment and proceedings for the collection of the tax have been complied with. The only question involved is the legal right of the assessors of the town of Mexico to assess a tax upon this property or on any part thereof.

The plaintiff relies upon R. S. ch. 9, sec. 3, which provides that "real estate for the purposes of taxation includes all lands in the

State and all buildings erected on or affixed to the same," and upon Rules of Construction, R. S., ch. 1, sec. 6, par. X, viz: "The word 'land or lands' and the words 'real estate' include lands and all tenements and hereditaments connected therewith and all rights thereto and interests therein." The application of this definition to a toll bridge, toll house and land connected therewith seems to be proper, *Kittery* v. *Portsmouth Bridge,* 78 Maine 93, but the weakness in the plaintiff's cause of action is that, under our statutes and the interpretation that has been placed upon them in analogous cases where the question has been raised, the real estate of a toll bridge corporation is not taxable to the corporation. To so hold would create double taxation, which is obnoxious to the spirit of our tax laws.

Under R. S., ch. 9 sec. 14, "The stock of toll bridges shall be taxed as personal property to the owners thereof, in the towns where they reside, except stock owned by persons residing out of the State, which shall be taxed in the town where the bridge is located, and where such bridge is in two towns one-half of the stock so owned by persons residing out of the State shall be assessed and taxed in each town." This section makes ample provision for the taxation of all toll bridge property, namely by taxing the shares of stock to the owners thereof, because the shares of stock represent the corporate property. Taxing the stock is in reality taxing the property, and to tax both is double taxation. There is some conflict of authority on this proposition theoretically, but this court has recently passed upon the question in the case of *East Livermore* v. *Banking Co.,* 103 Maine, 418, where both upon reason and what is deemed the better precedents this principle is adopted without hesitation. That case also holds that the legislative policy of this State is against double taxation. "There seems to be not only no intention to impose it but an anxiety to avoid it." Many illustrations are given to prove the soundness of that conclusion. Further, that case by analogy settles the principle involved in the case at bar, and is conclusive against the plaintiff's right of action. In that case the plaintiff town levied a tax upon certain shares of stock owned by the defendant in other banks. It claimed the right to do this under R. S., ch. 9, sec. 2, which enacts that "All personal property of the inhabitants of the State" is subject to taxation,

under R. S., ch. 9, sec. 5, which enacts that "personal estate for the purposes of taxation includes . . . all shares in moneyed and other corporations within and without the State," and under sec. 12 which provides that "all personal property within or without the State shall be assessed to the owner in the town where he is an inhabitant on the first day of such April," with certain immaterial exceptions. Section 29 of the same chapter provides that the stock of banks and banking associations shall be taxed to the owners thereof where they reside.

The court held that while the language of section 5 is explicit that all shares in money corporations shall be taxed, it does not necessarily follow that they are to be taxed twice or so taxed that the result shall be a double taxation of them, and that section 5 should not be read by itself but in connection with the other statutes prior and contemporaneous. "Taking all these into consideration," say the court, "the tax statutes as a whole do not force us to the conclusion that a tax is to be assessed at the same time upon all the personal property of a corporation to the corporation and also upon all its shares to the shareholders." Judgment was accordingly rendered for the defendant.

In the case at bar the situation is the same, mutatis mutandis. R. S., ch. 9, sec. 2, makes all the real estate within the State subject to taxation. Under section 3, real estate for the purposes of taxation includes all lands in the State and all buildings erected on or affixed to the same. Under section 8 "taxes on real estate shall be assessed in the town where the estate lies to the owner or person in possession thereof on the first day of each April." Section 14 requires the stock in toll bridges to be taxed as personal property to the owners thereof in the towns where they reside. It will thus be seen that like provisions apply to the taxation of real estate and the taxation of personal property, and we have here the same situation in taxing both the real estate to the toll bridge corporation and the capital stock to its owners, as in taxing the personal property to the bank and the capital stock to its owners. If the latter was double taxation and unauthorized the former also is. There is no escape from this conclusion. The reasoning in the bank case is decisive of this.

The anxiety to avoid double taxation in the case of the property of toll bridges is rendered even more obvious when we consider the origin and history of section 14, compelling the taxation of the stock. The legislative intent is thereby rendered clear and explicit, and resort to the original source is always desirable. *Taylor* v. *Caribou,* 102 Maine, 401.

Prior to 1845 this State passed no general tax act, that is, no public law prescribing the various classes and nature of the property to be assessed. These are to be found in the annual tax acts which were private and special laws, and were entitled in substance "an act to assess and apportion on the inhabitants of the State a tax," the amount of which varies with the different years. The general statutes at that time directed assessors to assess the town and county as well as the State taxes each year according to the rules laid down in the then last private act for raising a State tax. R. S., 1841, chap. 14, secs. 22 and 23. In these various annual tax acts, from 1820 to 1844 inclusive, personal estate was made to include among other kinds of property, "shares (or property) in any incorporated company for a bridge or turnpike road."

The general tax act of 1845, "An Act concerning the assessment of taxes," defined the term personal estate to include, after specifying certain classes, "all other property, included in the last preceding State valuation for the purposes of taxation." Pub. L., 1845, ch. 159, sec. 4. This act did not specifically mention stock in toll bridges, but it was included by reference in the last clause because such stock had been in terms designated in the tax act of 1844. However, the next Legislature made certain not only the taxing of the stock but the non-taxation of the property. Chap. 189 of the P. L. of 1846, amended the general tax act of 1845, ch. 159, sec. 4, and sec. 2 of the amendatory act is as follows:

"No part of the act to which this is additional, shall be deemed to authorize or require the taxing of toll bridges as real estate in the towns where the same are situated, but the stock in such bridges shall be taxed as personal property to the several owners in the towns where such owners reside." No part of this section has ever been repealed. In the following revision, it was condensed to read "the stock of all toll bridges shall be taxed as personal property to the owners thereof in the towns where they

reside." R. S., 1857, ch. 6, sec. 13. Subsequent revisions retain substantially the same form. The provision as to the non-taxation of the real estate to the corporation was not expressly stated, the revisers and the Legislature evidently not thinking it necessary, as the provision for the taxation of the stock impliedly negatived the power to tax the property. However, mere condensation and change of phraseology in revision are not deemed a change in the law unless so intended. *Hughes* v. *Farrar*, 45 Maine, 72; *John* v. *Sabattis*, 69 Maine, 473. Such a change does not necessarily nor even presumptively indicate a change in legislative will. *St. George* v. *Rockland*, 89 Maine, 43.

In the case at bar, therefore, we have not only the general legislative intent under which the case of *East Livermore* v. *Bank*, supra, was decided, but we have the express legislative intent as embodied in the amendatory act, P. L., 1846, ch. 189, sec. 2.

Our conclusion therefore is that the tax in question was unauthorized and cannot be collected. The tax must be imposed upon the stock of toll bridge corporations in the hands of its owners, and not upon the real estate in the hands of the corporation.

We have not overlooked the case confidently relied upon by the plaintiff, *Kittery* v. *Proprietors of Portsmouth Bridge*, 78 Maine, 93, in which it was held that so much of the bridge over the Piscataqua river between Portsmouth and Kittery as was within the limits of Kittery was properly taxable as real estate to the defendant corporation. In that case the statute providing for the taxation of the stock was called to the attention of the court and the question of double taxation was distinctly raised by the learned counsel for the defendant, but neither point was referred to in the opinion. The amendatory act of 1846, however, seems not to have been cited to the court. The only point considered in the opinion was whether, under the statutory definitions that portion of the structure within the town of Kittery should be regarded as real estate. The court so held and ordered judgment for the plaintiff. So far as the construction of the terms "lands" and "real estate" adopted in that opinion is concerned we concur. But in so far as it was held that the real estate was taxable to the corporation, that decision for the reasons hereinbefore stated, must be overruled.

*Judgment for the defendant.*