[Civ. No. 8466. First Appellate District, Division Two.—June 15, 1932.]

PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, JAMES FRANKLIN FUGITT, a Minor, etc., et al., Respondents.

304

T. J. Straub and John J. Briare for Petitioner.

A. I. Townsend for Respondents.

STURTEVANT, J.—This is an application for a writ of review. The petitioner seeks to have an award amended as to form but does not challenge the amount of the award. The facts may be briefly stated. On September 15, 1931, James L. Fugitt was killed while performing his duties as an employee of the petitioner. At the time of his death he was divorced from his wife. He left him surviving a minor son, James F. Fugitt, and aged mother, Amanda C. Fugitt. After proceedings duly had the Commission made an award as follows:

"1. James L. Fugitt, deceased, while employed as a wireman on September 15, 1931, at Oakland, California, by Pacific Gas and Electric Company, sustained injury occurring in the course of and arising out of his employment, proximately causing his death on September 16, 1931. At said time said employer was a self-insurer, and both employer and employee were subject to the provisions of the

Workmen's Compensation, Insurance and Safety Act of 1917.

"2. Said employee left surviving him, wholly dependent, his minor child James Franklin Fugitt.

"3. Said employee left surviving him Amanda C. Fugitt who was partially dependent upon him for support. The annual amount devoted for the support of said Amanda C. Fugitt was $240.00, entitling the said Amanda C. Fugitt to a death benefit of $720.00.

"4. The death benefit in this case amounts to $5000.00, and the total dependent James Franklin Fugitt is entitled to the sum of $4280.00, plus an award for the sum of $150.00 for burial expenses, payable direct to Amanda C. Fugitt as guardian *ad litem* and trustee of the minor James Franklin Fugitt. Said payments are based upon earnings of $180 a month; payments made none. The above death benefit is payable at the rate of $25.00 a week."

As recited above the petitioner does not complain of the amount of the award, however, it does complain of any portion of the award being made in favor of the surviving mother and asserts that the entire amount of the award, to wit, $5,000, should have been made in behalf of the dependent child James Franklin Fugitt. The petitioner quotes section 14, subdivision (d) of the Workmen's Compensation Act (as amended by Stats. 1919, p. 917, sec. 5), as follows: "If there is one or more persons wholly dependent for support upon a deceased employee, such person or persons shall receive the entire death benefit, and any person or persons partially dependent shall receive no part thereof." Thereupon it contends that the statute is free from ambiguity and that when such is the case there is no room for construction and the statute should be followed exactly as written. The respondent board replies that it makes no contention to the contrary, but it asserts that the passage quoted is only a small part of the statute and that the entire statute must be read before one is entitled to apply the rule above contended for. In support of its claim the Commission quotes subdivision (e) of the same section as follows: "The commission may, anything in this act contained to the contrary notwithstanding, set apart or reassign the death benefit to any one or more of the depen-

dents in accordance with their respective needs and as may be just and equitable, and may order payment to a dependent subsequent in right, or not otherwise entitled, upon good cause being shown therefor. . . . '' In its reply the petitioner asserts that subdivision (c) relied upon by the respondent Commission has no application to this case. It contends that the sentence quoted by it is free from ambiguity and that when a statute is free from ambiguity there is no occasion for interpretation. In taking this position we think the petitioner assumes a position that is too narrow. It predicates its point on one sentence. That sentence is only one of many contained in one section. That section is only one of .many comprising the entire statute. We are unable to say that the statute under consideration is free from ambiguity. We must proceed therefore in an endeavor to clear up that ambiguity. ▮▮ When an ambiguity exists the intention of the lawmakers may be arrived at by comparing the language of the act with other laws upon the same subject; by looking, if necessary, to the public history of. the time in which it was passed; and by resorting to other legitimate aids to construction. (23 Cal. Jur. 731.) The first act was chapter 399 of the Statutes of 1911 (Stats. 1911, p. 796). It was repealed. The next act was chapter 176 of the Statutes of 1913 (Stats. 1913, p. 279). To that act some few amendments were made by chapter 607 of the Statutes of 1915 (Stats. 1915, p. 1079). An entire revision took place by virtue of chapter 586 of the Statutes of 1917 (Stats. 1917, p. 831). Section 19 of the act of 1913 (Stats. 1913, p. 289), in general covered the subject matter before us. Section 19 of the act of 1915 (Stats. 1915, p. 1087, sec. 7, amending section 19 of act of 1913), did the same thing. But in the act of revision of 1917, the subject matter of section 19 of the earlier statutes became section 14 of the latter statute. Section 19 of the act of 1913 is divided into five major divisions: (a) defining those wholly dependent; (b) those partly dependent; (c) those not dependent; (d) division of benefit; (e) apportionment of benefit. The two divisions last referred to are as follows:

''(d) 1. If there is one or more persons wholly dependent for support upon a deceased employee, such person or persons shall receive the entire death benefit, and any person

or persons partially dependent shall receive no part thereof, unless otherwise ordered by the commission.

"2. If there is more than one such person wholly dependent for support upon a deceased employee, the death benefit shall be divided equally among them, unless otherwise ordered by the commission.

"3. If there is more than one person partially dependent for support upon a deceased employee, and no person wholly dependent for support, the amount allowed as the death benefit shall be divided among the persons so partially dependent in proportion to the relative extent of their dependency, unless otherwise ordered by the commission.

"(e) The death benefits shall be paid to such one or more of the dependents of the deceased, or to a trustee appointed by the commission, or a commissioner, for the benefit of the person or persons entitled, as may be determined by the commission, and the commission may, anything in this act contained to the contrary notwithstanding, apportion such benefits among the dependents in proportion to their respective needs and as may be just and equitable, and may order payment to a dependent subsequent in right, or not otherwise entitled, upon good cause being shown therefor. The person to whom the death benefit is paid for the use of the several beneficiaries shall apply the same in compliance with the findings and directions of the commission." Pausing to look at that statute, we think it is beyond debate that it designated *prima facie* who should receive benefits, but that it also vested in the Commission a discretion to change or vary from the statutory rule as the circumstances might demand. In 1917 that section was amended and became section 14 as the statute appears to-day. In this state the rule is statutory that when a part of a statute is amended the portions that are not altered are to be considered as having been the law from the time when they were enacted and the new provisions are to be considered as having been enacted at the time of the amendment. (Pol. Code, sec. 325.) The amendments of 1917 consisted of striking the words "unless otherwise ordered by the commission" from each of the subdivisions 1, 2 and 3 of paragraph (d). The amendment also transposed some of the words from the middle of paragraph (e) to the front of that paragraph. The word "apportion" was left out and

in its place there were inserted the words "set apart or reassign". As so amended it is clear that the Commission is given the power to apportion in the first instance, that is, "to set apart". It is further given the power to "reassign". If the award in the instant case had been made in 1913, or at any time thereafter down to and including the enactment of the act of 1917, there is no question but that the award would be regular. Therefore the sole question is, Did the amendment of 1917 take away the power to apportion as that power had formerly existed? Certainly dropping the words "unless otherwise ordered by the commission" did not necessarily have that effect, because a part of subdivision (e) was the specific passage which stated that the "commission may apportion benefits". The amendment to that specific subdivision was to change the word "apportion" to "set apart or reassign". It is obvious that such change does not necessarily show that the power to apportion was taken away. In form the act of 1917 is an act of revision. (*Sponogle* v. *Curnow,* 136 Cal. 580, 584 [69 Pac. 255].) But when such is the case slight changes in verbiage will not be taken as indicating a material modification. In 1805 in a case entitled *Taylor* v. *Delancy,* 2 Caines Cas. (N. Y.) 143, the Supreme Court of Error of the state of New York was called upon to determine who was entitled to letters of administration. An early statute of the state of New York adopted certain statutes of England. Both in 1787 and 1801 statutes of revision were adopted. In considering those statutes of revision, on page 151, Mr. Justice Spencer, writing the opinion, says: "My opinion is founded on this proposition, that where the law, antecedently to the revision was settled, either by clear expressions in the statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change. A contrary construction might be productive of the most dangerous consequences. The quaintness of expression in some of the ancient British statutes, the circumstances of there being several statutes on the same subject, required, in many cases, an entire change of language, but it has never, until now, been contended, that thereby an alteration of the law was to be inferred." That seems to be the leading case in America. The doctrine

has been copied into the several text-books. (2 Lewis' Sutherland on Statutory Construction, sec. 401; Endlich on Interpretation of Statutes, sec. 378; 36 Cyc. 1158.) In *Hyatt* v. *Allen,* 54 Cal. 353, the Supreme Court was called upon to determine its jurisdiction. The court examined the provision of the Constitution of California as adopted in 1849, as amended in 1862, and as adopted in 1879. On page 356 the court said: "If, on the other hand, there has been no substantial change effected in the meaning of the two clauses, the mere change in the phraseology will not be deemed to alter the law. The rule was laid down by Chief Justice Kent and Mr. Justice Spencer as follows: 'Where a law, antecedently to a revision of the statute, is settled, either *by clear expressions in the statutes* or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention to work a change.' (*Taylor* v. *Delancy,* 2 Caines Cas. (N. Y.) 143, 151; *Yates Case,* 4 Johns. (N. Y.) 317, 359.) This statement of the rule has been cited and approved by nearly all the eminent jurists of New York, and by many of the highest courts of other States." (Italics ours.) In *State* v. *Prate,* 48 N. D. 1240 [189 N. W. 334], the Supreme Court of North Dakota made an exhaustive study of the cases and at page 337 stated the rules as follows: "Upon the facts thus stated what principles of statutory construction apply? The general presumption obtains that the codifiers did not intend to change the law as it formerly existed. (*Braun* v. *State,* 40 Tex. Cr. Rep. 236 [49 S. W. 620, 622]; *United States* v. *Ryder,* 110 U. S. 729, 740 [28 L. Ed. 308, 4 Sup. Ct. Rep. 196, 201].) Changes made in the revision of statutes by alteration of the phraseology will not be regarded as altering the law unless there is a clear intent so to do. (*McDonald* v. *Hovey,* 110 U. S. 619 [28 L. Ed. 269, 4 Sup. Ct. Rep. 142]; *Becklin* v. *Becklin,* 99 Minn. 307 [109 N. W. 243]; *Inhabitants of St. George* v. *Rockland,* 89 Me. 43 [35 Atl. 1033]; *Taylor* v. *Caribou,* 102 Me. 401 [10 Ann. Cas. 1080, 67 Atl. 2, 4]; *Schmidt* v. *United States,* 133 Fed. 257 [66 C. C. A. 389]; *Brown* v. *Randolph County Court,* 45 W. Va. 827 [32 S. E. 165]; *East Boyer Tel. Co.* v. *Vail,* (Iowa) 129 N. W. 298; *Piper* v. *Boston & M. R. Co.,* 75 N. H. 435 [75 Atl. 1041]; *Stearns* v. *Graham,* 83 Vt. 111 [74 Atl. 486]; *State* v. *Holland,* 117

Me. 288 [104 Atl. 159]; *King* v. *Smith,* 91 N. J. L. 648 [103 Atl. 191]; *Greenfield* v. *Plumbing Co.,* 17 Ga. App. 637 [87 S. E. 912]; *State* v. *Bushnell,* 95 Ohio St. 203 [116 N. E. 464, 466]; *Investment Co.* v. *Railway Co.,* (D. C.) 226 Fed. 976; *Jones* v. *State,* 10 Ala. App. 152 [65 South. 411]; *Dennis* v. *School Dist.,* 166 Iowa, 744 [148 N. W. 1007]; 36 Cyc. 1168.) In ascertaining the intention of language used in a code revision, reference may be had to the prior statute for the purpose of ascertaining the legislative intent. (*Becklin* v. *Becklin, supra; Stevens* v. *Bridge Co.,* 115 Me. 402 [99 Atl. 94]." *Schmidt* v. *United States,* 133 Fed. 257, decided by the Circuit Court of Appeals, Ninth Circuit, is directly in point. At page 260 the court said:

"The Supreme Court, in construing the Revised Statutes, has repeatedly affirmed the settled rule that a change of phraseology in a revision will not be regarded as altering the law, where it had been well settled by plain language in the statutes, unless it was clear that such was the intent. Said the court in *McDonald* v. *Hovey,* 110 U. S. 619, 629 [28 L. Ed. 269, 4 Sup. Ct. Rep. 142, 146]:

" 'So upon a revision of statutes a different interpretation is not to be given to them without some substantial change of phraseology—some change other than what may have been necessary to abbreviate the form of the law.'

"And the court cited with approval *In re Murphy,* 23 N. J. L. 180, where, in construing several statutes which had been consolidated, a proviso in one of them broad enough in its terms to affect the whole consolidated law was held to affect only those sections with which it had been originally connected. In *United States* v. *Ryder,* 110 U. S. 729, 740 [28 L. Ed. 308, 4 Sup. Ct. Rep. 196, 201], the court said:

" 'It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed.'

"To the same effect is *Logan* v. *United States,* 144 U. S. 263, 302 [36 L. Ed. 429, 12 Sup. Ct. Rep. 617]. A case in point is *Doyle* v. *Wisconsin,* 94 U. S. 50 [24 L. Ed. 64], in which it was held that section 1007 of the Revised Statutes (U. S. Comp. Stats. 1901, p. 714), which provides that, where a writ of error may operate as a writ of *supersedeas,* execution shall not issue until ten days after the rendition of the judgment, has reference only to the courts of the

United States. This conclusion was reached upon a consideration of the statutes as they stood before the revision. The court, by Chief Justice Waite, said, 'The Revised Statutes are a revision and consolidation of the old statute, rather than an enactment of new'; and, after quoting section 5600 (page 3751), he added, 'This makes it proper that we should look to the original act to ascertain the legislative intent in cases of doubt.' In the recent case of *United States* v. *Severino,* (C. C.) 125 Fed. 949, Thomas, District Judge, in a carefully considered opinion, held that, notwithstanding the changes in revision, section 5395 still conferred on the federal courts jurisdiction of a perjury committed in naturalization proceedings in a state court in the procedure prescribed by Congress.

"Again, it is an established canon of construction that, in finding the meaning of an ambiguous statute in the revision, the courts are permitted to refer to the original statute from which the section was taken, to ascertain from its language and context to what class of cases the provision was intended to apply. *The Conqueror,* 166 U. S. 122 [41 L. Ed. 937, 17 Sup. Ct. Rep. 510]; *United States* v. *Bowen,* 100 U. S. 508 [25 L. Ed. 631]; *Myer* v. *Car Company,* 102 U. S. 11 [26 L. Ed. 59]; *United States* v. *Lacher,* 134 U. S. 626 [33 L. Ed. 1080, 10 Sup. Ct. Rep. 625]. In the case last cited the court said:

" 'If there be any ambiguity in section 5467 (U. S. Comp. Stats. 1901, p. 3691), inasmuch as it is a section of the Revised Statutes, which are merely a compilation of the statutes of the United States, revised, simplified, arranged, and consolidated, resort may be had to the original statute from which the section was taken to ascertain what, if any, change of phraseology there is, and whether such change should be construed as changing the law.' "

As shown above the power of the Commission to apportion the award was expressly stated in the statutes prior to the act of 1917. The power to reapportion or to reassign was not so stated. In the act of 1917, so far as has been called to our attention, no single factor of jurisdiction was taken from the commission. However, several new factors, quite out of the ordinary, were added. By subdivision (d) of section 20 (Stats. 1917, p. 850) it was provided: "The commission shall have continuing jurisdiction

over all its orders, decisions and awards. . . . '' That grant of power is repeated in subdivision (b) of section 65 (Stats. 1917, p. 874). Commencing with the act of 1913 certain hospitalization was required to be furnished an injured employee and disputes often arose. By subdivision (b) of section 17 of the act of 1917 (as amended by Stats. 1919, p. 918, sec. 6), jurisdiction over such disputes was vested in the commission. In the light of these changes we think it is obvious that in framing section 14 the legislature intended to vest in the discretion of the commission the power to apportion the benefit when making its award and thereafter to reassign such award as stated in said section.

Finally, both the title of the act and the preamble thereof are very broad and strongly point to the conclusions expressed above.

The award is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 15, 1932.